569 P.2d 854

**FUQUA HOMES, INC., a Delaware Corporation, Appellant,**

v.

**Marguerite GROSVENOR and Almira H. Tenney, Appellees.**

No. 2 CA–CIV 2425.

Court of Appeals of Arizona, Division 2.

June 27, 1977.

Rehearing Denied Aug. 9, 1977.

Review Denied Sept. 22, 1977.

them by reason of the fraud, embezzlement, defalcation and unlawful acts of Howard Watkins". The complaint alleged that Watkins represented himself to be appellant's franchisee and licensee and that appellant permitted Watkins to hold himself out to the public as such. The pretrial order, however, stated the issues in the following terms:

"Is the defendant liable for any reason or in any way for the actions or omissions of Howard Watkins? Is the defendant liable because Howard Watkins was not bonded or because he was defendant's franchise licensee?"

After trial, the court entered judgment in favor of appellees in the amount of $10,-972.38.

On appeal, appellant contends (1) that the court erred in interpreting the pretrial order so as to expand the issues in the case to include the theories of apparent authority, estoppel and ratification; and (2) that even if the issues were so expanded, no evidence was presented to sustain a judgment on any of those bases. Because we agree with appellant's second contention, we need not address the first.

The facts adduced at trial show that Howard Watkins was doing business as A & H Trailer Sales in Safford, Arizona. Appellees Grosvenor and Tenney met Watkins in Huachuca City, Arizona at the mobile home of Harold Cole, a friend of Mrs. Tenney's son. Mr. Cole had recently purchased his Fuqua mobile home from Watkins. He had experienced some delay in its delivery when Watkins' check to Fuqua was dishonored, and he testified that he told Mrs. Grosvenor that he had "some trouble" with Watkins although he was not sure he specifically mentioned the bad check.

Mrs. Grosvenor, however, liked the mobile home, and on December 20, 1973, she entered into a contract to purchase a Fuqua home from Watkins, making a $2,000 down payment. Watkins wrote a check to Fuqua for $1,000, but this check, like the one on the Cole order, was dishonored and Fuqua pulled the Grosvenor home off production. A Fuqua employee, Donald Spencer, went

Gorodezky, Marron & Diamond by John B. Marron, Phoenix, for appellant.

Slutes, Browning, Zlaket & Sakrison, P. C., by D. Thompson Slutes, Tucson, for appellees.

## OPINION

HOWARD, Chief Judge.

Appellees filed suit against appellant for "all damages and injuries sustained by

with Mrs. Grosvenor and Mrs. Tenney to Safford to try to find Watkins and to make good the check. They learned from the sheriff that Watkins was an "ex-con", that there was a warrant out for his arrest and that generally he was "not an outstanding citizen." During the trip, Spencer informed Mrs. Grosvenor and Mrs. Tenney that Watkins was not a licensed or bonded dealer.

Some time later, Watkins called the Fuqua office in Phoenix and said he would "make good" the check. After receiving the money, appellant completed production of the home and delivered it to Mrs. Grosvenor's lot on January 28, 1974. Watkins appeared after the delivery was made and collected $5,000 from Mrs. Grosvenor whose payments then totaled $7,628.98. Meanwhile, on January 2, 1974, Mrs. Tenney also had entered into a contract to purchase a Fuqua mobile home from Watkins. She made a $1,000 cash down payment and later made additional payments of $1,643.40 and $700.64, for a total of $3,343.40. Mrs. Tenney's home was never ordered, Mrs. Grosvenor's home was repossessed when Watkins failed to make further payments to appellant and Watkins disappeared.

■ The record indicates that appellant's files listed Watkins as a "dealer", that appellant knew Watkins was not licensed and bonded as required by law, that appellant knew that he was negotiating sales of its homes with third persons and that appellant had given him some of its brochures. We find, however, that the evidence does not establish an agency relationship so as to hold appellant liable for Watkins' actions.

■ Agency may be proven by contract, by facts raising an implication of agency, by ratification and by estoppel. *E–Z Livin' Mobile Homes, Inc. v. Tommaney*, 27 Ariz. App. 11, 550 P.2d 658 (1976); *Phoenix Western Holding Corporation v. Gleeson*, 18 Ariz.App. 60, 500 P.2d 320 (1972). In the present case, there was no evidence of an express contract. Moreover, the circum-

stances indicate that the relationship of appellant to Watkins was one of seller to buyer rather than principal to agent. See *Alvarez v. Felker Manufacturing Co.*, 230 Cal.App.2d 987, 41 Cal.Rptr. 514 (1964).

■ Appellees, however, mainly rely on the theories of ratification and estoppel to sustain the trial court's judgment.[1] Ratification occurs by acceptance of the benefit from an unauthorized act of one claiming to act as an agent when the affirmance is accompanied by knowledge of the material facts. *Phoenix Western Holding Corp. v. Gleeson*, supra. Appellees argue that the acceptance of the $1,000 deposit on the Grosvenor mobile home from Watkins constituted a ratification. We do not agree. Ratification does not apply where the third party did not deal with the agent as such but rather in his individual capacity. Restatement (Second) of Agency, § 85. Here appellees never testified that they believed Watkins was acting on behalf of Fuqua as its agent. Furthermore, the circumstances surrounding the receipt of the benefit must be such as reasonably tend to show an intention to ratify. *Phoenix Western Holding Corp. v. Gleeson*, supra. We do not see how the acceptance of a deposit on a contract between appellant and Watkins establishes appellant's intent to ratify and become responsible for Watkins' separate contracts with Mrs. Grosvenor and Mrs. Tenney.

■ Under the estoppel theory, a person will be held liable as a party to a transaction purportedly done on his account as a result of his manifestations to third parties that another is his agent or as a result of his inaction if he knows third parties believe another to be his agent and he does not take reasonable steps to notify them otherwise. *Phoenix Western Holding Corp. v. Gleeson*, supra; Restatement (Second) of Agency, § 8. In order for estoppel to apply, the third party must reasonably rely on the appearance of authority

---

1. Appellees also argue that the judgment may be sustained on a theory of apparent authority, but since the elements of estoppel by misrepresentation are virtually the same as those estab-

lishing apparent authority, it will not be discussed as a separate theory. See Restatement (Second) Agency, § 8, Comment *d*; § 8B, Comment *b*.

and change his position. Appellees argue that because appellant provided brochures to Watkins and because it sold homes to him knowing that he was an unstable character and was selling the homes to others without a license, appellant should be estopped from denying liability for Watkins' acts. We find the evidence falls short of that required to apply estoppel. There was no testimony that Watkins showed any brochures to appellees, and even if he did, that fact alone would not clothe him with apparent authority. Furthermore, nowhere on the purchase agreement is Watkins listed as a "Fuqua Dealer" or "Fuqua Agent". But most important, neither Mrs. Grosvenor nor Mrs. Tenney testified that she relied on any actions of appellant or any representation made by Watkins that he was appellant's agent.

Since we conclude that the trial court's judgment holding appellant liable cannot be sustained on the basis of estoppel or any other of the agency theories, we reverse.

HATHAWAY and RICHMOND, JJ., concur.