777 P.2d 237 (1989)
M.S.P. INDUSTRIES, INC., a Colorado corporation, d/b/a The Larimer Press, Plaintiff-Appellee,
v.
DIVERSIFIED MORTGAGE SERVICES, INC., a Colorado corporation, Defendant-Appellant.
No. 88CA0370.
Colorado Court of Appeals, Div. III.
June 29, 1989.
Sherman & Howard, Steven D. Plissey, Denver, for plaintiff-appellee.
Orten & Hindman, P.C., Charles W. Owens, Denver, for defendant-appellant.
CRISWELL, Judge.
The defendant, Diversified Mortgage Services (Diversified), appeals from the money judgment entered against it and in favor of plaintiff, M.S.P. Industries. Because we conclude that the evidence was insufficient, as a matter of law, to support the judgment, we reverse and remand with directions to dismiss plaintiff's complaint.
Diversified is in the management consulting business. In 1986, it entered into a contract with Platte Valley Advertising (Platte Valley), a graphics design firm, in which Platte Valley agreed to design, produce, and deliver to Diversified a number of printed advertising brochures. This contract called for a fixed price, to be paid in three installments, to Platte Valley for the brochures to be produced. Diversified ultimately paid to Platte Valley two of the three installments called for; the third was not paid because Diversified had complaints *238 with the quality of some of the brochures.
When Diversified approved the design prepared by Platte Valley, it learned that Platte Valley did not intend to print the brochures itself, but meant to contract with a printing firm for this purpose. When it learned this, Diversified requested that it be allowed to select the printer Platte Valley was to use, but Platte Valley refused this request.
Instead, Platte Valley accepted a proposal by plaintiff to print the brochures. While plaintiff was aware that the brochures were to be furnished to Diversified, its written proposal was made to Platte Valley alone, with no indication that plaintiff thought that Platte Valley was acting as an agent for Diversified. In addition, plaintiff set up an account in Platte Valley's name alone and requested financial information only from Platte Valley. It made no similar request for information from Diversified. Further, plaintiff's statements for its services were sent to Platte Valley, not to Diversified.
Plaintiff's evidence was that it was a trade practice of the printing industry that, when a contract is entered into with a design firm such as Platte Valley, that firm is looked to for payment initially, but, if that firm does not pay the bill, the "end user" becomes responsible for payment. Plaintiff admitted, however, that it had not informed Diversified of this alleged trade practice, and there is no evidence that Diversified was otherwise aware of it.
When plaintiff prepared the first proofs, they were delivered to Platte Valley. Diversified had certain objections to these proofs, and these objections were relayed to plaintiff by Platte Valley; there were no discussions between plaintiff and Diversified at that time. After these initial proofs were corrected, plaintiff contacted Diversified and requested that it inspect the new proofs. Diversified refused to do so, either because it was of the view that this was Platte Valley's responsibility (according to Diversified's evidence) or because its personnel were too busy (according to plaintiff's testimony).
Because Diversified needed a number of the brochures for a trade show, plaintiff caused a portion of them to be delivered directly to Diversified. These brochures, constituting about 25% of the total number ordered, were inspected by Diversified and sent to the trade show. Plaintiff delivered the remaining brochures to Platte Valley, but, with Diversified's consent, this delivery took place several days later than was initially required.
When Platte Valley did not pay plaintiff pursuant to their contract (and later declared bankruptcy), plaintiff sought payment from Diversified. Based upon the foregoing facts, the trial court concluded that, by accepting part of the brochures and consenting to the late delivery of the remainder, Diversified had accepted the benefits of the transaction between plaintiff and Platte Valley and, thus, had ratified that contract. It therefore entered judgment against Diversified in the amount of some $9,800.
It is unquestionably true that a principal may ratify the unauthorized act of an agent and thereby become obligated to the same extent as he would have been had he originally authorized the agent's act. Hayutin v. Gibbons, 139 Colo. 262, 338 P.2d 1032 (1959). Further, the principal's acceptance of the benefits resulting from the unauthorized act may constitute an affirmance and ratification of that act. Security Savings & Loan Ass'n v. Colorado Real Estate Development, Inc., 163 Colo. 155, 429 P.2d 288 (1967). See generally Restatement (Second) of Agency § 82 and § 98 (1957).
However, there are several conditions which must be shown to exist before the acceptance of benefits by one person may be held to constitute the ratification by that person of the acts of another.
First, and perhaps foremost, the person whose act is claimed to have been ratified must have been acting on behalf of the person benefitted. If the actor's actions are in his own behalf, the doctrine of ratification is inapplicable. This is so because:

*239 "Where there is a transaction between the purported agent and a third person, one reason for allowing ratification to be effective as prior authorization is to give to the other party what the other expected to get in dealing with the agent. This reason does not exist if the other does not intend to deal with the principal." Restatement, supra, § 85(1), comment.
Thus, if plaintiff here intended to deal directly with Platte Valley in its individual capacity, and not as agent for Diversified, retention of benefits by Diversified would not result in any ratification so as to render it liable to plaintiff for those benefits. See Fuqua Homes, Inc. v. Grosvenor, 116 Ariz. 424, 569 P.2d 854 (Ariz.App. 1977). See also Stokes v. International Media Systems, Inc., 686 P.2d 1368 (Colo. App.1984) (party bestowing benefits upon third party as a result of independent contract with another party is not entitled to restitution from third party in event of other party's non-performance).
Further, there can be no ratification of a purported agent's act unless the alleged principal has knowledge of all material facts relating to the transaction being ratified. MacMarr Food Corp. v. Jagger Produce Co., 92 Colo. 355, 20 P.2d 550 (1933). Restatement, supra, § 91.
Here, in contracting with plaintiff for printing services, Platte Valley was not acting as Diversified's agent and plaintiff did not intend to contract with Diversified, through Platte Valley. The undisputed evidence disclosed that Platte Valley was conducting its own business; that the price charged by plaintiff for its services had no effect upon the fixed price contract Platte Valley had with Diversified; and that the brochures (save for those required immediately for a trade show) were delivered to Platte Valley. Thus, the relationship between Platte Valley and Diversified was, as a matter of law, not one of principal and agent, but one of two independently contracting parties. See Restatement, supra, § 14K. Platte Valley's contract with plaintiff was designed to fulfill a part of the obligations that it owed to Diversified, and to this extent at least, plaintiff became Platte Valley's agent to perform those obligations.
Indeed, plaintiff's evidence was not that it was looking to Diversified to pay the bill incurred by Platte Valley because it considered Diversified to be Platte Valley's principal. Its assertion that Diversified was liable for this obligation was grounded upon the alleged existence of a practice in the printing trade to look to the "end user" of the printed product, if the contracting design firm failed to pay.
However, since Diversified could not be bound by a trade practice of an industry in which it was not engaged, absent proof of actual knowledge by Diversified of that practice, plaintiff's asserted basis for Diversified's liability was not supported by the evidence. See Pittman v. Larson Distributing Co., 724 P.2d 1379 (Colo.App. 1986).
The judgment is reversed and the cause is remanded to the trial court with directions to dismiss plaintiff's complaint insofar as it asserts any claim against Diversified.
NEY and RULAND, JJ., concur.