368 P.2d 753

Ella Lee OWENS, Executrix of the Estate of George Keith Owens, aka Keith Owens, Appellant,

v.

Jack E. HUNTER and Virginia Hunter dba Juniper Lumber Co., and Arizona Moulding Co., Inc., Appellees.

No. 6772.

Supreme Court of Arizona.

In Division.

Feb. 7, 1962.

Rehearing Denied April 17, 1962.

Dallas P. Richeson, E. J. Hilkert and Kenneth Biaett, Phoenix, for appellant.

Marvin Johnson, Phoenix, for appellees.

UDALL, Vice Chief Justice.

This appeal is from a judgment denying plaintiff executrix recovery for the deficiency remaining after judicial sale of collateral securing a promissory note on which the maker, Arizona Moulding Co., a corporation, was in default.

Payee on the note was the decedent, Keith Owens. While doing business as Owens Bros. Lumber in 1954 he had extended credit to the defendant Arizona Moulding Co. in connection with lumber purchases by the latter amounting to $40,000. The note of May 25, 1955 was signed by the Moulding Company's president, defendant Jack E. Hunter, and called for payment of the

$40,000 in monthly installments of $500 plus interest beginning January 1, 1957. An acceleration clause was included and provision was also made for payment by defendant of reasonable attorneys' fees in the event of necessary legal action. Securing the note and executed on the same date was a chattel mortgage on some thirty-six (36) items of equipment and machinery belonging to and on the premises of the Moulding Company. These items were listed in an "inventory" appended to the chattel mortgage.

Nearly seventeen (17) months later the Moulding Company prepared and delivered to Keith Owens an "Agreement" dated October 15, 1956 which provided in pertinent part:

> "It is agreeable to me that your obligation to me, namely a note dated May 31, 1955, may be satisfactorily fulfilled by the following method, any time between the date of this agreement and January 1, 1957:

> "I will accept all the equipment as listed under Chattel Mortgage dated May 31, 1955, as full payment on said note." [1]

On November 15, 1956 Owens signed the above "Agreement" but beneath his signature he also inscribed the following:

> "I can't locate my list at this time, however as you stated yesterday it is to be the complete list *not* the deleted one.
> "/s/ Keith Owens"

Defendant Hunter testified that subsequent to the execution of this "Agreement" he and plaintiff Owens could not come to any understanding respecting which items listed in the chattel mortgage were to be surrendered to plaintiff in satisfaction of the debt. Hunter also prevented one of Owens' employees from removing one of the disputed items from the Moulding Company's premises. His reason for doing so was that any arrangement between the parties was not "settled" at the time. An argument over this incident resulted in plaintiff striking defendant in the eye.

On December 18, 1956 defendant Hunter's attorney wrote the attorney for the plaintiff and explained that pursuant to the "contract of October 15, 1956" the "equipment * * * [would] be available on December 31, 1956 at Arizona Moulding's plant." *Which* equipment was not specified.

Early in January of 1957, after due notice to defendant Moulding Company that the note of May 25, 1955 was in default for failure to pay the first installment thereon, plaintiff Keith Owens instituted suit to replevy the items listed in the chattel mortgage. Shortly thereafter, however, Owens was killed in an accident and his widow and executrix, Ella Lee Owens, was

---

1. The actual date of the note and mortgage was May 25, 1955.

substituted as plaintiff in the action. Pursuant to statutory procedure the items replevied were sold at public auction for $12,144. Then, in a supplemental complaint, plaintiff executrix asked for the deficiency, costs of the replevin and sale and attorneys' fees. She requested also that judgment be entered against defendant Jack E. Hunter and his wife Virginia individually and as individuals doing business as the Juniper Lumber Company. This was on the theory that Hunter was merely the alter ego of the Arizona Moulding Co. and the Juniper Lumber Company.

The trial court, after hearing the testimony referred to above, found that the "Agreement" dated October 15, 1956 was "a contract" and gave judgment for defendants on plaintiff's claim. In addition the trial court found in favor of defendants on a counterclaim for $1,554.75 being the value of certain items of equipment wrongfully taken and sold in the replevin proceedings.

On appeal defendants contend that the judgment should be sustained because the "Agreement" constituted an accord and satisfaction thereby extinguishing plaintiff's claim on the note. With this we cannot agree.

■ Accord and satisfaction is an affirmative defense to be pleaded, Ariz.R.Civ. P. rule 8(d), 16 A.R.S., and proved, Phillips v. County of Graham, 17 Ariz. 208, 214, 149 P. 755, 757–758 (1915). An agreement between the parties to the satisfaction of an existing claim by a future substituted performance is an accord executory. And it is generally presumed that actual performance and not the promise thereof constitutes the satisfaction. Williston, Contracts, § 1847 at 5205 (1938). When such substituted performance is rendered there is an accord and satisfaction which will bar an action on the original claim. On the other hand, if an accord is reached but the substituted performance never rendered by the debtor it is usually held that the creditor may sue on the original claim. Moreno v. Russell, 47 Ariz. 38, 53 P.2d 411 (1936); Howard v. Norton-Morgan Commercial Co., 11 Ariz. 158, 89 P. 541 (1907). But "there is no accord, either executory or executed, unless there is an offer either by the debtor to give or by the creditor to receive a substituted performance in full settlement, *and an acceptance* by the other party of the offer so made." Corbin, Contracts, § 1279 at 97 (1951). (Emphasis added.)

■ In this case the "Agreement" could have been construed as an offer from defendant Moulding Company to Keith Owens. When signed by Owens without more it could well have been an accord executory. But Owens also referred to the complete list "*not* the deleted one." This was not an unequivocal acceptance but rather a counter offer which the record clearly discloses as having never been ac-

---

cepted by defendant Moulding Company. If the "Agreement" and Owens' additions thereto were regarded as the first offer the result is still the same. There was no acceptance either express or implied by the Moulding Company. Indeed, with the possible exception of the letter of December 18, 1956 from defendant's to plaintiff's attorney, all of the evidence indicated that the parties never came to terms regarding which equipment secured the mortgage. Here, as a matter of law, the parties never reached an accord executory much less an accord and satisfaction.

Accord and satisfaction was the sole defense interposed by defendant Moulding Company at trial. It follows that the judgment must be reversed with directions to enter judgment for plaintiff executrix and against the corporation for the amount of the deficiency ($40,000 less $12,144) plus interest, costs of replevin and such reasonable attorneys' fees as determined by the trial court reduced by the amount awarded defendant corporation on the counterclaim ($1,554.75).

The trial court never reached the issue of whether defendant Jack E. Hunter was merely the alter ego of the Moulding Company (the corporation) and/or whether judgment should be entered against defendant Hunter and his wife as individuals doing business as the Juniper Lumber Company. Although we are reluctant to reverse piecemeal we feel these issues must first be presented to and decided by the trial court before this Court may consider them. Accordingly, the sole issues to be tried on remand are (1) the reasonableness of attorneys' fees, and (2) was defendant Hunter merely the alter ego of the Arizona Moulding Co. or the Juniper Lumber Company, or both of them, and should he and his wife be personally liable?

Judgment reversed and remanded with directions.

BERNSTEIN, C. J., and ELMER, Superior Court Judge, concurring.