588 P.2d 370

**Paul A. LESCHORN, d/b/a Executive Suites, Appellant,**

v.

**George XERICOS and Charlotte Xericos, his wife, Appellees.**

**No. 1 CA–CIV 3548.**

Court of Appeals of Arizona,
Division 1,
Department B.

Dec. 7, 1978.

Law Offices of Thomas Aranda, Jr. by Thomas Aranda, Jr., David M. Heller, John R. Baker, Phoenix, for appellant.

Goldstein, Flynn & Mason, Ltd. by Pamela L. Kingsley, Philip T. Goldstein, David N. Ramras, Phoenix, for appellees.

## OPINION

JACOBSON, Presiding Judge.

This case requires us to determine whether an attempted settlement by the parties of their landlord-tenant action resulted in an agreement in the nature of an accord and satisfaction which worked a discharge of the liabilities that were originally asserted by the plaintiff-appellant landlord in the action. For reasons hereinafter stated, we hold that the original controversy was not terminated and that the trial court accordingly erred in dismissing the complaint.

The appellant Leschorn initiated this action against appellees for damage to the apartment he had leased to them and for holdover rent. Appellees counterclaimed for their security deposit. Following considerable discovery, the case was set for trial on April 20, 1976. Prior to commencement of trial, appellees orally moved for dismissal of the complaint, based upon two letters and a release. The first letter is dated December 5, 1974, and reads as follows:

Dear Tom:

This is to confirm this morning's telephone conversation wherein we agreed to settle all outstanding claims which Paul Leschorn and Mr. and Mrs. Xericos may have against each other. This includes, but is not limited to, Cause No. C–298172 pending in the Maricopa County Superior Court and entitled "Paul A. Leschorn dba Executive Suites vs. George Xericos and Charlotte Xericos".

The agreement of settlement and compromise requires George Xericos to do the following:

1. Install the downstairs carpeting which Mr. Xericos previously removed from his apartment at the Executive Suites, in an apartment unit of Mr. Leschorn's choice at that apartment complex. It is understood that said carpeting was used by Mr. Xericos for approximately one year while in his apartment at the Executive Suites. It is further understood that the apartment chosen by Mr. Leschorn shall be the same size as Mr. Xerico's previous apartment.

2. Install the same (or if not available, similar) carpeting in the upstairs area of said apartment including the spiral staircase, bedroom, and den area. It shall not include, however, carpeting of the bathroom area.

3. Deliver the fireplace unit which Mr. Xericos previously removed from his apartment at the Executive Suites.

In consideration of the foregoing, Mr. Leschorn will execute a general release releasing Mr. and Mrs. Xericos from any and all claims which he may have against them, including, but not limited to, damages which he allegedly sustained by reason of holes in the walls and ceiling of the subject apartment, water damage, carpet damage, carpet pad damage, and any rent which is allegedly due and unpaid.

I enclose herewith a general release to be signed by Mr. Leschorn prior to the time Mr. Xericos undertakes his obliga-

tion under this agreement. Upon obtaining Mr. Leschorn's signature on the release, please call me and inform me that you have it in your possession and give me reasonable instructions as to the time and place for Mr. Xericos to perform under this settlement. Upon his completion of the tasks which he is to have done, you shall forward the executed general release to my office and you shall thereafter send me a stipulation and order for dismissal of the pending litigation, each side to bear its own costs.

If this accurately sets forth our settlement agreement, sign a copy of this letter, which is also enclosed, and return it to my office immediately.

> Very truly yours,
> s/ David N. Ramras

The second letter, dated February 7, 1975, reads as follows:

Dear Greg:

Pursuant to your request, this is to revise my December 5, 1974 letter to Tom Aranda which purported to confirm our settlement agreement. As I understand it, the only portion of that letter which you were troubled by was the paragraph numbered 2 and in that regard it should be altered to read:

> "2. Install carpeting in the upstairs area of said apartment including the spiral staircase, bedroom, and den area. It shall not include, however, carpeting of the bathroom area. The carpeting referred to in this paragraph shall be the same carpeting of which a sample was furnished to Mr. Lyon earlier this week."

The balance of the December 5, 1974 letter sets forth the settlement agreement which we have agreed to and, thus, I ask that you please send me the executed General Release as soon as possible.

> Very truly yours,
> s/ David N. Ramras

Pursuant to the next-to-last paragraph of the letter of December 5, 1974, appellant executed a release which appellees also submitted in support of their motion to dismiss. The release is in conventional form. It states that it is given "for good and valuable consideration" and releases and discharges appellees from, *inter alia*, all claims and causes of action.

Appellees' oral motion was granted by the trial judge. Thereafter, appellant made a written motion for reconsideration of the ruling. An affidavit of appellant's counsel is attached to the motion, the substance of which is to the effect that appellees did not perform their promise to carpet the upstairs with the specified type of carpeting.

■ Appellant contends that the accord reached, which is evidenced by the letters, is an accord executory. *See generally* 6 Corbin on Contracts §§ 1268–1275 (1962). Appellees claim a compromise and settlement which is both an accord *and a satisfaction. See generally* 6 Corbin on Contracts §§ 1276–1292 (1962). These concepts are the subject of the following statement of general principles in *Owens v. Hunter*, 91 Ariz. 7, 10, 368 P.2d 753, 755 (1962):

> Accord and satisfaction is an affirmative defense to be pleaded, Ariz.R.Civ.P. rule 8(d), 16 A.R.S., and proved, *Phillips v. County of Graham*, 17 Ariz. 208, 214, 149 P. 755, 757–758 (1915). An agreement between the parties to the satisfaction of an existing claim by a future substituted performance is an accord executory. And it is generally presumed that actual performance and not the promise thereof constitutes the satisfaction. Williston, Contracts, § 1847 at 5205 (1938). When such substituted performance is rendered there is an accord and satisfaction which will bar an action on the original claim. On the other hand, if an accord is reached but the substituted performance never rendered by the debtor it is usually held that the creditor may sue on the original claim. *Moreno v. Russell*, 47 Ariz. 38, 53 P.2d 411 (1936); *Howard v. Norton-Morgan Commercial Co.*, 11 Ariz. 158, 89 P. 541 (1907).

And in *Poggi v. Kates*, 115 Ariz. 157, 160, 564 P.2d 380, 383 (1977), our Supreme Court quoted the following passage from *Aritex Land Co. v. Baker*, 14 Ariz.App. 266, 482 P.2d 875 (1971):

It appears from the record that the trial court was of the opinion that the settlement agreement was a mere executory accord, without satisfaction and therefore constituted no bar to the enforcement of the original claim. He was correct in this respect. See 1 Am.Jur.2d Accord and Satisfaction § 47. It is true that when the parties to a pending suit compromise the cause of action, *and the terms of the compromise are complied with* the parties are bound by the agreement and the suit is ended. 15A C.J.S. Compromise and Settlement § 22, page 221. Here, however, the terms of the compromise had not been complied with.

■ As is noted in *Owens v. Hunter, supra,* accord and satisfaction is a matter of affirmative defense. Appellees' motion would procedurally therefore have been an appropriate subject for a motion for summary judgment, with the attendant procedural safeguards of Rule 56. See *Poggi v. Kates, supra.* Regardless of how the motion is viewed, however, it was not well taken.

It is clear that the agreement started out as an accord executory. The last paragraph of the letter of February 7, however, introduced an element of confusion into the agreement because, notwithstanding the clear terms of the December 5 letter by which the executed release was to be forwarded only "upon completion of the tasks which he [appellee] is to have done," it asked for a return of the executed release "as soon as possible." Such a sequence would lend support to appellees' theory of an executed accord, or an accord with present satisfaction. Appellant's counsel added to the confusion by forwarding the executed release to appellees' counsel prior to appellees' attempt to perform.

The question is whether this act of appellant's counsel amounted to a practical construction of an ambiguous agreement. *See Gerber v. Cook,* 90 Ariz. 390, 368 P.2d 458 (1962); *Crone v. Amado,* 69 Ariz. 389, 214 P.2d 518 (1950). We think not. The very paragraph of the February 7 letter which creates the confusion refers to the "bal-ance" of the December 5 letter as setting forth the settlement agreement. In view of that, appellant's counsel could believe that appellees' counsel's request was simply erroneous in terms of sequence but that the terms of the letter of December 5 would control.

Appellees point to the principles adopted in Sections 418 and 419 of the Restatement of Contracts (1932) as mandating a presumption and holding in their favor. Section 418 provides:

A subsequent contract may itself be accepted as immediate satisfaction and discharge of a pre-existing contractual duty, or duty to make compensation; and if so accepted the pre-existing duty is discharged and is not revived by the debtor's breach of the subsequent contract.

Section 419 provides:

Where a contract is made for the satisfaction of a pre-existing contractual duty, or duty to make compensation, the interpretation is assumed in case of doubt, if the pre-existing duty is an undisputed duty either to make compensation or to pay a liquidated sum of money, that only performance of the subsequent contract shall discharge the pre-existing duty; but if the pre-existing duty is of another kind, that the subsequent contract shall immediately discharge the preexisting duty, and be substituted for it.

Even though some of the claims by appellant against appellees were unliquidated and all were disputed, this did not transform the agreement into an accord and satisfaction. Comment a under Section 418 reads as follows:

a. It is a question of interpretation whether a subsequent agreement between creditor and debtor means that this agreement itself shall immediately discharge the earlier duty and be substituted for it, or whether it is only performance of that agreement that shall have that effect. Section 419 gives an aid to the proper interpretation.

■ As stated above, the letter of December 5 indisputably outlined an executory accord. The letter of February 7

changed one substantive provision but otherwise left the agreement as outlined in the December 5 letter intact. Bearing in mind that a contract will be construed most strictly against its author, *Harford v. National Life & Casualty Co.*, 81 Ariz. 43, 299 P.2d 635 (1956), we believe that the intent to create an executory accord is clear.

In sum, we hold that in this particular case appellant bargained for a substituted performance, and not merely the promise thereof. Our holding is consistent with *Owens* and *Poggi* and the other Arizona authorities discussed by the parties.[1]

For the foregoing reasons, the order of the trial court dismissing appellant's complaint is reversed.

FROEB, C. J., Division 1, and WREN, J., concur.

1. *Green v. Huber*, 66 Ariz. 116, 184 P.2d 662 (1947); *Moreno v. Russell*, 47 Ariz. 38, 53 P.2d 411 (1936); *Cano v. Arizona Frozen Products Co.*, 38 Ariz. 404, 300 P. 953 (1931).