777 P.2d 222

**Dusty HAYS, a single person, Plaintiff–Appellant,**

v.

**Michael Joseph FISCHER, Defendant–Appellee.**

No. 1 CA–CV 88–090.

Court of Appeals of Arizona, Division 1, Department B.

July 13, 1989.

Law Offices of Gilcrease & Martin by Glynn W. Gilcrease, Jr. and James C. Martin, Tempe, for plaintiff-appellant.

Harris & Palumbo, P.C. by Kevin W. Keenan and Anthony J. Palumbo, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Presiding Judge.

This is an appeal from an order enforcing an agreement between counsel by which appellant's personal injury claim was settled for the sum of $10,500. Appellant presents the following issues for our consideration:

(1) whether a settlement of a nineteen-year-old plaintiff's personal injury

claim can be enforced when she learns of a material change in her physical condition and other facts before she has received payment or executed release documents and chooses to reject the settlement documents despite her attorney's previous acceptance of the settlement offer from defense counsel;

(2) assuming an agreement settling an action is reached, whether a party may rescind it before performance when there is no prejudice to the other party;

(3) whether failure to comply with Rule 80(d), Ariz.R.Civ.P., is fatal to an informal settlement of a personal injury case between counsel;

(4) may attorney's fees be awarded under A.R.S. § 12–341.01(A) upon enforcement of an agreement settling a personal injury action.

After reviewing the record presented in this appeal, we conclude that appellant's attorney had the express authority to settle appellant's claim, that the negotiated settlement agreement is binding, and that no basis was presented which would relieve appellant from the settlement agreement. We also conclude that the trial court properly awarded attorneys' fees. We therefore affirm the trial court's order.

## FACTS AND PROCEDURE

The appellant (Hays) filed a complaint alleging that at about 8:50 p.m. on June 17, 1986, she was a passenger in an automobile being driven by appellee Michael J. Fischer. It was further alleged that Fischer was intoxicated and drove in such a grossly negligent and reckless manner so as to cause the automobile to go over a curb and strike a light pole, thereby causing injuries to her. The complaint asked for both compensatory and punitive damages.

Two days after the accident, Hays engaged Attorney Larry G. Ruch to represent her. At Ruch's recommendation, Hays received treatment from a chiropractor, Dr. Kirsten, for about three weeks. In the first or second week of July 1986, she went to Montana to visit an aunt. While in Montana, she saw a Dr. Elbert. At the end of August or the beginning of September 1986, she returned to her mother's home in Colorado Springs, Colorado, where she saw a Dr. Adler. She later saw Dr. Buettner. When Hays' deposition was taken on November 24, 1986, she stated that she had not consulted a medical doctor because she believed her injuries needed only chiropractic attention.

In November and December of 1986 and January of 1987, the parties' counsel engaged in discovery and settlement discussions. On January 12, 1987, Ruch wrote to Fischer's counsel requesting that Fischer's insurer, Nationwide Insurance Company, pay Hays' chiropractic and hospital bills of $3,413.25 under the $5,000 medical payments coverage of Fischer's policy. Ruch's letter also stated:

I have conveyed your offer of judgment in the sum of $7,500 to my client and she does not wish to accept that offer, but I have authority to settle her claim for the sum of $15,000 together with the funds due her under the medical pay provisions making a total settlement offer of $18,413.25 and this offer will remain open only for two weeks until January 26, 1987.

On January 27, 1987, Fischer's counsel, Kevin Keenan, wrote to Ruch informing him that Nationwide would pay the amount requested under the medical payments provision of Fischer's policy. Keenan's letter also stated:

As to your demand to settle the liability claim under the present lawsuit, please be advised that I have been given the necessary authority to reject your demand of $15,000. I have been given the necessary authority to make a counter-offer to you of $10,000. Our offer to settle the liability portion of this case is obviously contingent upon receiving a full release from your client, along with a dismissal of the present lawsuit, with prejudice. This offer to settle the liability portion of this claim will only be open until Friday, February 6, 1987, after which time it will automatically be revoked without further notice.

The following day, Ruch telephoned Hays and informed her of the defense's

offer. Hays told Ruch she really needed the money and asked how long it would take to litigate the action if the offer were turned down. Ruch told her litigation would take at least six months, depending on whether or not it was arbitrated. Ruch testified at his deposition:

And so I told her that I could probably get her a few dollars more, that why didn't she give me authority to try that, and she said that would be fine, and I told her that, "What if I can't get you one dollar more? Do you want me to accept the 13,413.25?"

She said, "Yes, go ahead and accept that, but try to get as much more as you can."

I then suggested that I try for at least a total of 15,000, which would include the med pay, which would raise the offer approximately fifteen hundred.

Q. Okay.

A. So she said, "Go ahead and do that," and so then I—that was my conversation with her.

On January 28, 1987, Ruch wrote Keenan:

I conveyed your offer of $10,000 together with the medical pay of $3,413.25 making a total of $13,413.25 to my client and she does not want to accept it, but in an effort to settle her claim we would reduce our demand of $18,413.25 to a total of $15,000 including the medical pay. I think that this is a fair settlement for both sides and if such is acceptable would you please go ahead and order the settlement draft and the release as I promised my client that if we could arrive at a settlement we would do so promptly.

On February 4, 1987, Keenan responded in a letter to Hay's attorney:

As I told you last week, Nationwide has agreed to pay the $3,413.25 that you previously demanded under the Med–Pay provision of their policy. Enclosed find the original of Nationwide's check No. 72–060603 in the amount of $3,413.25, representing full payment under the Med–Pay portion of Nationwide's policy.

Please be advised that I am now in receipt of your January 28th letter which rejects our offer to settle the liability portion of this claim for $10,000. Your letter makes a counteroffer of $15,000, but that sum includes the $3,413.25 of Med–Pay. Given the fact that we have now made full payment under the Med–Pay, I see your January 28th letter as making a counteroffer of $11,586.75. We are rejecting your counteroffer.

Enclosed find our Offer of Judgment in the amount of $10,500. You should advise your client that this is the most that we are willing to pay to settle the liability portion of this claim.

Pursuant to Rule 68, Ariz.R.Civ.P., Fischer on February 4, 1987, filed an offer of judgment in the amount of $10,500.

Ruch received Keenan's February 4th letter, together with a copy of the offer of judgment, on February 5, 1987. Ruch, at his deposition, testified that before he responded to Keenan's letter of February 4th, he checked with Hays' various doctors. He found there was an additional bill for $270 that he did not know about which had not been included in the $3,413.25 figure previously demanded under Nationwide's medical payments coverage. Because Ruch already had authority to accept an offer of $10,500 plus medical payments, he did not again attempt to talk to Hays.

On February 5, 1987, Ruch again wrote Keenan:

I have conferred with my client and she wishes to accept your offer of judgment in the sum of $10,500 subject only to the additional $270 in medical expenses that she has with the Buettner Chiropractic Clinic in ·Colorado. I have advised them to send me their bill for the last three medical treatments which I did not have at the time I gave you her previous medical bills which totaled the sum of $3,413.25 which you have sent me the medical payment check. I should have this bill in the next couple of days and will send it to you.

Ruch further testified at his deposition that, in his view, the February 5th letter had settled all aspects of the case "subject

only to my client approving the release and signing the drafts and sending them back to me."

On February 18, 1987, Keenan responded in writing to Ruch as follows:

Please be advised that I have informed Nationwide that you have accepted our offer to settle this case for $10,500. I have further forwarded to Nationwide the additional bills that you sent me from Buettner Chiropractic · Clinic in the amount of $270. As soon as I receive the appropriate draft(s) from Nationwide, I will forward same on to you. This letter will also serve to confirm the fact that you and I have agreed that the lawsuit in this case will be disposed of by way of a Stipulation and Order for Dismissal with Prejudice. I will forward this Stipulation over to you just as soon as I receive the drafts from Nationwide. You and I have also agreed that as soon as Nationwide pays the $270 that is still outstanding on the medical payment policy, that your client's medical payment file can be closed, and Nationwide will have no further obligation to your client.

At the time his deposition was taken, Ruch stated that, as far as he was concerned, as of February 18, 1987, he and Keenan had agreed to settle all aspects of the liability claim against Fischer on behalf of their clients, along with all aspects of the medical payments claim against Nationwide. He further stated that, based on his conversations with Hays, he had authority at that time to enter into the settlement on her behalf. At the time of the settlement, Ruch considered punitive damages unlikely to be recovered because of "recent supreme court cases" along with many other considerations used to evaluate Hays' claim.

At some point on or before February 17, 1987, Hays consulted and retained Lyle Robertson, an attorney in Colorado Springs, Colorado, to represent her. At Robertson's request, psychiatrist Richard L. Conde, M.D., also of Colorado Springs, began an evaluation of Hays on February 17, 1987. On February 20, 1987, Ruch received a letter from Robertson informing Ruch that Robertson was Hays' new attorney. Ruch called Robertson. From Robertson, Ruch heard for the first time that Hays was having more medical problems and did not want to proceed with the settlement. Hays had not told Ruch about any additional medical problems when he spoke to her on January 28, 1987. Further, Robertson did not tell Ruch that Hays felt Ruch had not had authority to settle the case for $10,500.

After receiving Robertson's letter, Ruch called Keenan. He told Keenan not to send the draft because he had no authority to receive it and probably was not going to be Hays' attorney any longer. Ruch also told Keenan that he had had the necessary authority to settle the liability and medical aspects of the case. On February 25, 1987, Keenan sent Ruch a letter confirming their conversation of February 20th. With it, he forwarded a check for $10,770, together with a receipt and release of all claims and a stipulation and order for dismissal with prejudice. Ruch did not sign the stipulation to dismiss the case, and Hays has not executed the release.

Ruch moved to withdraw as Hays' counsel in this litigation and was permitted to do so by order filed March 18, 1987. Hays' current Arizona counsel appeared in superior court on her behalf on March 27, 1987.

On March 16, 1987, Fischer filed a motion to enforce the settlement agreement. After briefing and argument, the trial court granted the motion and later entered a formal order in accordance with its ruling. The order made the following findings:

(1) It is undisputed that the parties . entered into a settlement agreement whereby Plaintiff agreed to settle all aspects of the present lawsuit by signing a Release and Stipulation for Dismissal with Prejudice, in exchange for Defendant's payment of $10,500.

(2) It is undisputed that Plaintiff's former counsel, Larry G. Ruch, had the necessary authority to enter into the above settlement agreement, and did in fact enter into the settlement agreement.

(3) It is undisputed that Plaintiff had the appropriate mental capacity to authorize the above settlement agreement, and that Defendant is innocent of any wrongdoing in connection with obtaining the settlement.

(4) The settlement agreement is binding between the parties, and no basis has been shown to relieve Plaintiff from the effect of the settlement agreement.

The trial court's order awarded Fischer $1,755.00 in attorney's fees and $161.70 in costs. It also directed Fischer or his liability insurance carrier to tender to Hays a check in the sum of $10,500 less attorney's fees and costs, directed Hays to endorse a release in favor of Fischer and his liability insurance carrier, and dismissed Hays' complaint with prejudice. The trial court later denied Hays' timely motion for a new trial. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(D) and (F)(1).

## LACK OF "CONSUMMATION"

■ Whether an attorney, as his client's agent, has authority to bind his client is a question of fact, and the trial court's findings will not be disturbed unless they are unsupported by the evidence or are erroneous as a matter of law. *Norberg v. Fitzgerald*, 122 N.H. 1080, 1082, 453 A.2d 1301, 1303 (1982); *see also Bud Antle, Inc. v. Gregory*, 7 Ariz.App. 291, 438 P.2d 438 (1968).

From the outset, Hays acknowledges there is no question that Ruch represented her; that he properly entered into settlement negotiations with defense counsel; and that, with Hays' oral concurrence, he agreed with defense counsel to settle the case for $10,500. Relying primarily on *Richfield Oil Corp. v. LaPrade*, 56 Ariz. 100, 105 P.2d 1115 (1940), Hays argues she nevertheless retained the right to reject Fischer's counsel's offer and withdraw Ruch's authority to settle the lawsuit at any time before the settlement agreement was actually "consummated" by tendering a draft and executing the release and stipulation for dismissal. Hays urges that, under *Richfield*, Ruch's agreement to settle

the case was, in effect, an agreement only to carry Fischer's settlement offer to plaintiff for her approval.

Citing *Owens v. Hunter*, 91 Ariz. 7, 368 P.2d 753 (1962), Hays further contends the agreement between Ruch and Keenan was, at best, an executory accord. She argues that Fischer's obligation under the accord could not replace his liability on Hays' personal injury claim until the accord was actually performed. Hays finally argues that Keenan's letter of January 27, 1987, made settlement "contingent" on Fischer's receipt of a full release and dismissal of Hays' lawsuit with prejudice.

We are not persuaded by Hays' arguments or her interpretation of the record. It is clear from Ruch's deposition testimony that Hays expressly authorized him not merely to convey settlement offers to her, but actually to enter into a settlement agreement on her behalf for $10,000 and anything more he could obtain. Moreover, we do not interpret Fischer's January 27th offer through Keenan as inviting a settlement agreement that would not bind either party until fully "consummated."

■ Instead, we agree with Fischer that, once this case was settled on February 5, 1987, by Ruch's acceptance on behalf of Hays of Fischer's offer, there was a binding settlement agreement between the parties. It obligated Fischer to tender $10,500 to Hays and required Hays, in turn, to execute a release and a stipulation to dismiss the action with prejudice. The execution of the release and stipulation was not a condition precedent to the settlement agreement, but was an obligation Hays undertook when she entered into the settlement through Ruch.

Hays' reliance on *Richfield Oil Corp. v. LaPrade* is misplaced. In explaining its holding that the attorneys representing an impecunious plaintiff on a contingent fee basis could not be personally compelled as "plaintiffs" to give security for costs, the *Richfield* court stated:

The client under such circumstances may settle, compromise or release his claim on such terms as he desires without the consent of the attorneys, or even in defi-

ance of their wishes. They cannot do so without the express consent of the client, except for the full amount of the claim. 56 Ariz. at 105, 105 P.2d at 1118. We do not read this language to hold that a settlement agreement made by an attorney with his client's full authority does not bind the client until he or she has actually signed the documents that effectuate it. *Richfield* simply does not say that.

An attorney is not his client's general agent and has no authority merely by virtue of retention in litigation to impair the client's substantial rights or the cause of action without the client's consent. *Garn v. Garn*, 155 Ariz. 156, 745 P.2d 604 (App.1987). However, where the client expressly so authorizes the attorney, the attorney may enter into an agreement on the client's behalf compromising a lawsuit, and his action in doing so binds the client. *Smith v. Washburn & Condon*, 38 Ariz. 149, 297 P. 879 (1931). *See also* 7 Am. Jur.2d, *Attorneys at Law* §§ 156 and 158 (1980; Supp. March 1989).[1] In *United Liquor Co. v. Stephenson*, 84 Ariz. 1, 322 P.2d 886 (1958), the plaintiff sued the defendant for a private way of necessity across her land for the purpose of transporting cattle. During trial, the attorneys for the parties announced that a settlement had been reached. The defendant later asked to withdraw from the settlement on the ground that she did not understand it, and the trial court held she could withdraw from the settlement on that ground and was not bound by it.

On appeal, the supreme court reversed the trial court. It found from the record that the defendant had given her attorneys express authority to conclude a settlement on the terms agreed to. The court stated:

> An attorney does not, by the general authority arising out of his employment, have an implied or inherent power to compromise and settle his client's cause of action. *But, where express authority is given, the attorney may compromise any matter, and his action in doing so is binding upon his principal. Smith v. Washburn & Condon*, 38 Ariz. 149, 297 P. 879 [1931]. Where an attorney is authorized by his client to compromise a lawsuit the attorney has the legal right to do so and the client is bound thereby unless the settlement is grossly unfair. *Allen v. Fewel*, 337 Mo. 955, 87 S.W.2d 142 [1935].

84 Ariz. at 3–4, 322 P.2d at 887 (emphasis added). In the present case, Hays expressly authorized Ruch to settle her claim against Fischer for $10,000 or any larger amount, and that is precisely what Ruch did.

We are aware of no authority supporting the proposition for which Hays mistakenly cites *Richfield*, that a settlement agreement made between counsel is not binding on a party who has expressly authorized it until that party has actually signed the documents necessary to effectuate it. The cases of which we are aware support the opposite view. In *Zamouski v. Gerrard*, 1 Ill.App.3d 890, 275 N.E.2d 429 (1971), the plaintiff had a personal injury claim against LaSalle Insurance Company's insureds. The plaintiff's complaint alleged his lawyer and LaSalle's lawyer had orally agreed to settle plaintiff's claim for $125,-000, and after plaintiff had stopped preparing for trial, LaSalle refused to comply with the agreement. The trial court granted LaSalle's motion to dismiss plaintiff's complaint, holding no action could be maintained to enforce the alleged oral settlement because no judgment had been entered on it and the case had not been dismissed or the releases executed.

On plaintiff's appeal, LaSalle argued that, in contrast to the situation in a contract action, an oral settlement in a tort action is not enforceable without further positive action to confirm it. The court disagreed and stated:

> suits *By Lawyers*, 15 Man.L.J. 1–26 (1985) (discussing a lawyer's authority to bind a client in settlement negotiations in the English and Canadian legal systems) and accompanying footnotes.

---

**1.** For a general discussion of applicable law and relevant ethical considerations in the lawyer settlement negotiation context, see Perschbacher, *Regulating Lawyer's Negotiations*, 27 Ariz.L. Rev. 75–138 (1985), and Vincent, *Compromising Positions—The Unauthorized Settlement of Law-*

On policy grounds, making the distinction between contract and tort settlements as a matter of law seems without basis. We can see no reason to allow one settling a tort claim to escape his commitment, while enforcing the settlement of the contract claim. While we recognize that there may be special problems of proving that a binding settlement of a lawsuit in all of its terms has been reached in a tort case, these would more properly be matters to consider in a hearing on the merits. Since no issue of mistake or fraud was presented by the pleadings, the oral settlement could not be said to be unenforceable as a matter of law and the dismissal on this basis would have been improper.

1 Ill.App.3d at 895–96, 275 N.E.2d at 432. *Accord Fishburn v. Barker*, 165 Ill.App.3d 229, 518 N.E.2d 1054 (1988). *See also Cunningham v. Iowa–Illinois Gas & Elec. Co.*, 243 Iowa 1377, 55 N.W.2d 552 (1952) (execution of release was only a formality); *Myers v. Thomas*, 502 S.W.2d 941 (Tex.Civ. App.1973) (trial court erred in declining to enforce oral settlement of personal injury claim; release was implied in law and did not need to be in writing). In addition, where the facts are undisputed, a trial court has authority to summarily enforce a settlement agreement entered into while the suit is pending before it. *McAllister v. Hayes*, 165 Ill.App.3d 426, 116 Ill.Dec. 481, 519 N.E.2d 71, *appeal denied*, 121 Ill.2d 572, 122 Ill.Dec. 439, 526 N.E.2d 832 (1988); *Sheffield Poly–Glaz, Inc. v. Humboldt Glass Co.*, 42 Ill.App.3d 865, 1 Ill.Dec. 555, 356 N.E.2d 837 (1976).

Contrary to Hays' argument, *Owens v. Hunter*, 91 Ariz. 7, 368 P.2d 753 (1962), does not support her claim that she would only have lost the right to pursue her personal injury claim against Fischer if the settlement agreement between Ruch and Keenan had been fully consummated. In *Owens*, the court stated:

An agreement between the parties to the satisfaction of an existing claim by a future substituted performance is an accord executory. And it is generally presumed that actual performance and not the promise thereof constitutes the satisfaction. Williston, Contracts, § 1847 at 5205 (1938). When such substituted performance is rendered this is an accord and satisfaction which will bar an action on the original claim. On the other hand, if an accord is reached but the substituted performance is never rendered by the debtor it is usually held that the creditor may sue on the original claim.

*Id.* at 10, 368 P.2d at 755. *Owens* would certainly support the view that Hays could have continued to pursue her personal injury claim if Fischer had refused to make the payment he was required to make under the settlement agreement. Such is not the case. Here, Fischer did everything the settlement agreement required him to do, and Hays is bound by the settlement agreement that Ruch had negotiated on her behalf. We cannot agree that Hays could defeat that agreement by rejecting Fischer's performance and refusing to tender her own.

In her opening brief, Hays argues she is entitled to rescind the settlement agreement because (1) Ruch misadvised her about the recoverability of punitive damages due to Fischer's intoxication when the accident occurred; (2) a new medical opinion was "discovered" late in the litigation; and (3) Ruch failed to advise Hays she had personal insurance coverage that would apply to any judgment over $25,000. Hays argues further that rescinding the settlement agreement is appropriate because doing so would not cause Fischer any prejudice.

Fischer responded to those arguments at some length in his answering brief. In her reply brief, however, Hays changes her analysis. There, she states for the first time that she was not seeking the equitable remedy of rescission, which requires legally sufficient grounds and would force a plaintiff to return the other party to the *status quo ante*. Rather, Hays states she is instead seeking "a derivative type of rescission that springs from the terminability of any agency contract." She reasons that, in this case, notwithstanding Ruch's actions, she herself never accepted the settlement agreement and was therefore not bound by it. It is thus evident that Hays'

"rescission" analysis is merely a different version of her contention that she would not have been bound by the settlement agreement Ruch made with Fischer's counsel unless she had actually accepted the insurance draft and signed the release tendered by Fischer. We have already rejected that contention.[2]

### CIVIL RULE 80(d)

Hays further argues that the settlement agreement in this case was not binding on her because it failed to comply with Rule 80(d), Ariz.R.Civ.P., which provides:

> Agreement or consent of counsel or parties. No agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes.

Again, we cannot agree.

■ Rule 80(d) applies only if the *agreement* in question is "disputed." In the present case, the existence of the settlement agreement and its terms are not in dispute. The only issue was whether Hays was bound by the settlement agreement. Moreover, even assuming Rule 80(d) applied,[3] the settlement agreement was memorialized in Ruch's letter of February 5, 1987, and Keenan's letter of February 18, 1987, and was therefore "in writing." We cannot agree with Hays' contention that a written agreement complies with Rule 80(d) only if it has also been "entered in the minutes." That phrase has meaning only as applied to oral agreements made in open court and does not apply to written agreements.

### ATTORNEY'S FEES

Hays finally argues attorney's fees may be awarded pursuant to A.R.S. § 12–341.01(A) only in cases in which the underlying claim arises from a contract, and the trial court therefore erred in awarding Fischer his attorney's fees under that statute. We disagree. In *Lamb v. Arizona Country Club*, 124 Ariz. 32, 601 P.2d 1068 (App.1979), the defendant in an action to quiet title to real property unsuccessfully appealed from an order denying a motion pursuant to Rule 60(c), Ariz.R. Civ.P., to set aside a stipulated judgment resolving the action. We granted the plaintiff's request for an award of attorney's fees pursuant to A.R.S. § 12–341.01(A), holding the matter was one "arising out of a contract:"

> By their Rule 60(c) motion, appellants sought, essentially, to invalidate the agreement. Nothing in the language of the statute suggests that it will not apply when the agreement is negotiated in the course of litigation and incorporated into a judgment.

124 Ariz. at 34, 601 P.2d at 1070. *Accord Flood Control Dist. of Maricopa County v. Conlin*, 148 Ariz. 66, 712 P.2d 979 (App. 1985).

■ Contrary to Hays' argument, neither *Lamb* nor *Flood Control* are distinguishable on the ground that the settlements in those cases had been "consummated." That fact played no part in the

---

**2.** Hays also argued in her brief that when Keenan offered to settle Hays' claim against Fischer for $10,500, Ruch's response constituted a counteroffer of $10,500 plus payment of $270 in additional medical expenses under Nationwide's medical payments coverage. She urged this counteroffer was still pending when she later revoked Ruch's authority to settle the case and, accordingly, no settlement agreement was ever formed. This argument was abandoned by Hays' counsel in oral argument, and we therefore do not address it.

**3.** No Arizona case holds definitively that Rule 80(d) was intended to apply to settlement agreements like the one under consideration in this case. Division Two's decision in *Hackin v. Rupp*, 9 Ariz.App. 354, 452 P.2d 519 (1969), assumed that it did, but it is apparent from the *Hackin* opinion that the threshold issue of the rule's applicability was not argued. There is some limited authority from other jurisdictions holding that court rules requiring stipulations to be in writing unless made in open court apply only to matters which arise in the action and not to an agreement which completely disposes of the action and of the claim on which it is based. *Kapiloff v. Askin Stores, Inc.*, 202 Ga. 292, 42 S.E.2d 724 (1947); *Langlois v. Langlois*, 5 App.Div.2d 75, 169 N.Y.S.2d 170 (1957). *Contra, Omaha Nat'l Bank of Omaha v. Mullenax*, 211 Neb. 830, 320 N.W.2d 755 (1982) ("overwhelming majority" hold such rules or statutes applicable to settlements).

analysis in either case. In addition, Hays cites no authority for her argument that A.R.S. § 12–341.01(A) does not apply where fees are incurred in establishing the existence of a contract, and we are aware of none. Here, Fischer sought an award of attorneys' fees as a consequence of a breach of a settlement agreement or a "contract" between the parties. The trial court's award of attorneys' fees was proper and is affirmed. The broad language of the statute belies that contention.

Fischer requests an award of attorney's fees on appeal pursuant to A.R.S. § 12–341.01(A) or 12–349. In our opinion, the criteria required for an attorney's fees award under A.R.S. § 12–349 is not present. In our discretion, we decline to award attorney's fees under A.R.S. § 12–341.01(A).

The decision and order of the trial court are affirmed.

KLEINSCHMIDT and VOSS, JJ., concur.