800 P.2d 3

**PACIFIC WESTERN CONSTRUCTION COMPANY, Petitioner Employer,**

**Massachusetts Bay Insurance Company, Petitioner Carrier,**

v.

**INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Walter Pafford, Respondent Employee.**

**No. 2 CA–IC 89–0047.**

Court of Appeals of Arizona, Division 2, Department B.

May 17, 1990.

Review Denied Nov. 14, 1990.

Long, Lester & Lundmark, P.A. by Steven C. Lester and R. Todd Lundmark, Phoenix, for petitioner employer.

The Industrial Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

Rabinovitz & Associates, P.C. by Gary M. Israel, Tucson, for respondent employee.

## OPINION

LACAGNINA, Judge.

The employer and its insurance carrier appeal from the June 12, 1989 Industrial Commission award denying a compromise and settlement agreement entered into between a claimant and the carrier in 1980, while at the same time approving the stipulated findings and award of June 1980 which resulted from the settlement agreement.

The issues presented by this appeal are:

1. The scope and criteria of the commission's review of a settlement of lost earning capacity,

2. The applicability of general contract principles to commission awards based on settlements,

3. The survival of a stipulated award independent of the settlement upon which the award is based, and

4. The computation of credits to the carrier for monies paid under a settlement agreement which is later nullified by the commission.

We find that contract principles govern the setting aside of a settlement agreement resulting in a stipulated award, and that the scope and criteria of the commission's review of a settlement is whether at the time of the settlement there was a genuine and bona fide dispute between the parties regarding the issue of lost earning capacity and whether good grounds existed to justify the settlement. We set aside the award because it failed to make findings consistent with contract principles or the findings required by *Gray v. Industrial Commission*, 24 Ariz.App. 499, 539 P.2d 973 (1975), *approved* 113 Ariz. 296, 552 P.2d 766

(1976), and *Jones v. Industrial Commission*, 114 Ariz. 606, 562 P.2d 1104 (App. 1977).

In light of our decision, we need not address issues 3 and 4 raised by the parties.

## FACTS AND PROCEDURAL BACKGROUND

The claimant suffered a compensable injury to his elbow in 1977. Hearings in 1979 resulted in an award for permanent impairment to the left shoulder in addition to the left elbow to be compensated on an unscheduled basis. On January 17, 1980, the commission issued its findings and award for unscheduled permanent partial disability and awarded benefits of $303 per month. The claimant requested a hearing on the January 17, 1980 award. The claimant's low back problems suffered before 1977 were affecting his ability to obtain employment. The carrier contended that this affected the permanent partial disability award of $303 per month and requested a reduction to approximately $217 per month. Prior to a June 6, 1980 hearing, claimant's attorney requested a settlement with the carrier for $30,000 in advance permanent partial disability benefits in return for lifelong credit to be applied in the amount of the loss of earning capacity award. On June 13, 1980, the commission issued its findings and award incorporating a stipulation submitted by the parties entitling the claimant to permanent partial disability benefits of $340 per month. The carrier paid $30,000 to the claimant upon receipt from him and his attorney of an executed agreement on June 23, 1980. The settlement agreement stated that the stipulated loss of earning capacity award was an integral part of the agreement. The claim remained closed from June 1980 to June 1988. On June 1, 1988, claimant's new attorney notified the carrier that the agreement was invalid and unenforceable and that, if the carrier did not reinstate payments according to the June 1980 stipulated award, a 1061(J) hearing would be requested. On October 20, 1988, the claimant requested a hearing seeking compensation from June 1980 to the date of the hearing and thereafter.

At a prehearing conference the administrative law judge stated he would first conduct a hearing to determine the validity of the settlement agreement and if the agreement was rejected, further hearings would be held to determine lost earning capacity and credits due the carrier for the $30,000 paid in 1980.

At the conclusion of the hearing on the settlement issue, the administrative law judge issued his findings and award rejecting the compromise and settlement agreement and affirming the 1980 stipulated award for lost earning capacity. A request for review was filed by the carrier for clarification regarding the additional hearings to determine loss of earning capacity and credits because the compromise and settlement had been rejected. On September 11, 1989, the administrative law judge affirmed the earlier decision without comment as to the lost earning capacity or credits due the carrier and set no further hearings.

## 1989 FINDINGS AND AWARD

After receiving evidence presented by both parties, the administrative law judge made the following findings.

3. After that stipulation was entered and on June 18, 1980 the parties entered into an "agreement for advancement of permanent partial disability benefits" whereby the defendants advanced $30,000.00 in permanent partial disability benefits in exchange for a monthly credit of $340.00 for the remainder of Mr. Pafford's life. This agreement was not submitted to the Industrial Commission for its review, approval or denial.

4. The applicant testified that prior to the entry of the June 13, 1980 award he and his attorney at that time had had discussions regarding settlement of his claim. The applicant testified further that on June 18, 1980 his attorney had him sign a piece of paper accepting money. The applicant testified that he did not read the agreement and that he just saw the signature page. The applicant

testified further that his attorney told him that he had just gotten ten years in advancement on his loss of earning capacity award and that after that he could come back for monthly payments or negotiate for additional settlement. The applicant testified that after attorney fees were deducted he received $22,-000.00 which he used to buy a used trailer and pickup. Upon cross-examination the applicant testified that it was in fact his signature on the agreement document and that he had not asked his attorney anything about the contents of the stipulation. The applicant testified further that no representations were made by anybody other than his attorney and that he had signed the agreement because he wanted the money. The applicant testified that he did not feel that anyone from the defendants misrepresented any aspect of the agreement. Further cross-examinations established that the applicant placed a portion of the money in the bank and received interest for that investment.

\* \* \* \* \* \*

6. While initially, the issue in the instant case would appear to be whether or not *Safeway, supra* would be retroactive, it would appear that the issue is actually controlled by *Jones, supra* which became caselaw three years prior to the stipulated award being entered. Further, the Court of Appeals in *Vigil v. Industrial Commission*, 24 Ariz.App. 496, 539 P.2d 90 [970] (1976) [1975] observed that such agreements are not necessarily completely "void," however, are "voidable." The Court observed that the Commission has the authority to nullify settlements in question when they fail to meet the criteria set out in *Gray, supra.*

The Industrial Commission has the jurisdiction and authority to review the document signed by the parties on June 18, 1980 and so in reviewing this document consideration must be given to the resolution of The Industrial Commission of April 9, 1987. Paragraph D of that resolution provides the Administrative Law Judge shall approve a compromise and settlement agreement if: "(2)

the applicant has read and understands the terms of the Compromise and Settlement Agreement." The evidence in the instant case does not establish that the applicant read or understood the agreement for advancement of permanent partial disability benefits. The agreement does not meet the safeguards of *Safeway, supra* or the criteria of the April 1987 resolution and is disapproved. The June 13, 1980 award remains in effect.

## ORDER

IT IS HEREBY ORDERED that the Agreement for Advancement of Permanent Partial Disability Benefits be and the same is hereby rejected.

## CONTRACT PRINCIPLES

It is obvious from the findings that the administrative law judge relied upon the April 9, 1987 Industrial Commission resolution cited in Finding No. [7], not in existence in 1980 when the settlement was made, rather than general principles of contract law. The validity and enforceability of stipulations and settlement agreements in workers' compensation cases must be determined according to contract principles. *Bradley v. Industrial Commission*, 51 Ariz. 291, 76 P.2d 745 (1938); *Dutton v. Industrial Commission*, 162 Ariz. 464, 784 P.2d 290 (App.1989); *Field v. Industrial Commission*, 137 Ariz. 257, 669 P.2d 1034 (App.1983).

The ability of the claimant to repudiate or set aside his 1980 agreement under the facts of this case is limited to his ability to prove duress, mental incompetency, fraud, misrepresentations or mutual mistake of fact. In Finding No. 4 the claimant's testimony that no representations were made by anyone except his attorney and that no one associated with the carrier misrepresented any aspect of the agreement prevents him from repudiating the agreement. The only reasons given by the claimant to repudiate his settlement were that 1) he wanted the money, 2) his lawyer told him the money was a 10–year advance and he could obtain more there-

after, and 3) he signed the agreement without reading it. Failure to read an agreement reduced to writing and signed by a party precludes recovery for fraud or misrepresentation concerning oral statements made about the contents of the agreement. *Apolito v. Johnson,* 3 Ariz.App. 232, 413 P.2d 291 (1966). The carrier corresponded with the claimant's attorney and received an executed agreement containing clear terms, signed by the attorney and the claimant. It had the right to rely on the attorney's authority to represent the claimant and bind his client to the terms of the settlement. The claimant cannot, eight years after settlement, repudiate the agreement based on his attorney's misrepresentations which were not known by the carrier. *Hayes v. Fisher,* 161 Ariz. 159, 777 P.2d 222 (App.1989).

## SCOPE AND CRITERIA FOR REVIEW

■ The administrative law judge correctly determined in Finding No. 6 that the commission has the authority to nullify settlements when they fail to meet the criteria set out in *Gray v. Industrial Commission, supra. See Jones v. Industrial Commission, supra,* and *Safeway v. Industrial Commission,* 152 Ariz. 42, 730 P.2d 219 (1986). Although *Gray* deals with the compensability of a claim, the reasoning is made applicable to lost earning capacity issues by latter decisions. In *Gray* the court said:

> The scope and criterion of the Commission review of such proposed settlements is succinctly set forth in *Brigham Young University v. Industrial Commission of Utah,* [74 Utah 349, 279 P. 889 (1929)], and need not be here repeated. The sole issue is the genuineness and bona fides of the parties regarding the issue of compensability. If reasonable men would differ as to whether the claim is compensable or not, the stipulation and settlement should be approved.

24 Ariz.App. at 503, 539 P.2d at 977.

In *Brigham Young University v. Industrial Commission of Utah, supra* at 361, 279 P. at 893, relied upon in *Gray,* the Utah Supreme Court stated in part:

> We have examined the record, not for the purpose of determining whether the award should be affirmed or annulled, but to ascertain whether the claim of the parties is well founded, and whether on the record the right of recovery is uncertain, and for the purpose of ascertaining the bona fides of the parties and whether there were good grounds justifying a settlement. We find such to be the case. Indeed, on the record it may well be said that the right to recover is quite doubtful. The making of a settlement under such circumstances is not detrimental to the interests of the state or of the public. It rather subserves such interest. The right of parties sui juris to settle their own controversy and avoid litigation is a valuable and resolute right, and may be exercised by them under all circumstances, unless the state, under a proper exercise of police power has circumscribed, restricted, or prohibited it. Holding as we do that no such inhibition or restriction either expressly or by necessary implication is manifested by the act, we think the parties had the undoubted right to make the settlement which was made by them.

There is evidence in the record that claimant's attorney approached the carrier prior to the hearing scheduled to determine lost earning capacity. A dispute existed because of a prior back injury which could have reduced the claimant's $303 per month award for lost earning capacity. Claimant wanted to avoid this result by offering to accept $30,000, which placed at the then-prevailing rate of interest, would have insured continued monthly payments of $303 or more and avoided the risk of a lesser amount at the conclusion of the scheduled hearing. Whether these factors proved the dispute was bona fide, whether *reasonable minds would differ about the dispute over lost earning capacity and whether the settlement was reasonable* were not considered by the administrative law judge. The parties had the right to settle their dispute in 1980. *Safeway v. Industrial Commission, supra,* gives us the best example of why a claimant can benefit from settlement. The commission

should not refuse to approve or nullify good faith settlements meeting the criteria in *Gray* in order to place the parties back to 1980 and reopen the dispute over the issue of lost earning capacity which might result in a loss to the claimant.

We set aside the award and remand for further hearings consistent with this opinion and, if the commission nullifies the 1980 settlement, for further hearings to determine loss of earning capacity and the carrier's credit plus interest for the $30,000 paid to claimant in 1980.

FERNANDEZ, C.J., and LIVERMORE, P.J., concur.