NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MIKE FEZOUATI GOLAN,
*Petitioner Employee*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

LEE & CO,
*Respondent Employer*,

UNITED STATES FIDELITY & GUARANTY,
*Respondent Carrier*.

No. 1 CA-IC 21-0003
FILED 10-26-2021

Special Action - Industrial Commission
ICA No. 96178-936687
INSCA No. 127-CB-VMQ3069-T
INSCA No. UC000012293015461
The Honorable Amy L. Foster, Administrative Law Judge

**DECISION SET ASIDE**

APPEARANCES

Mike Fezouati Golan, San Antonio, TX
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Norton & Brozina, PC, Phoenix
By Christopher S. Norton
*Counsel for Respondent Employer & Respondent Carrier*

---

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

---

**W E I N Z W E I G**, Judge:

**¶1**　　　Mike Golan ("Employee") and U.S. Fidelity & Guaranty ("Carrier") petition for special action review of the Industrial Commission of Arizona's decision upon review vacating the Commission's approval of a settlement agreement between Employee and Carrier. We set aside the decision.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　Employee fractured his ankle working for Lee & Co. in 1979, and successfully applied for worker's compensation benefits. In 2017, Carrier closed Employee's claim with a permanent impairment. Employee petitioned to reopen the claim.

**¶3**　　　In August 2020, Employee and Carrier entered a Full and Final Settlement Agreement, and the parties moved the Industrial Commission to approve the settlement. The agreement included the language and attestations required under A.R.S. § 23-941.01(B) and (C). It provided that Employee "fully underst[ood]" and "agreed to the terms of this settlement and request[ed] approval of it by the Industrial Commission of Arizona," adding that "coercion, duress, fraud, misrepresentations, or undisclosed additional agreements" had not "been used" to secure the agreement. Employee also attested that he "declined the opportunity to seek legal advice or be represented by counsel," "understands the rights being settled and released by the agreement," and "understands that monies received for future medical treatment associated with the industrial injury should be set aside to ensure that the costs of the treatment will be paid." *See* A.R.S. § 23-941.01(C).

2

¶4 A month later, an ALJ questioned the Employee under oath "to make sure [he has] a thorough understanding of the terms of the settlement," "to make sure that [he] understand[s] what legal rights [he'll] be giving up," and "to ensure that [he has] entered into the settlement knowingly and voluntarily." The hearing lasted a few minutes. Employee confirmed he read and voluntarily signed the settlement agreement and reiterated his desire to "proceed with this settlement." At the same time, the Employee expressed ambivalence about the agreement, saying he was not "happy" but "my back [is] against the wall," and the agreement offered "peace of mind." Asked whether he has "a thorough understanding of the settlement," the Employee answered "[l]egally not" and asked the ALJ two questions, including when the money would be available and who receives it if "I die before I spend the money."

¶5 The ALJ approved the settlement agreement on September 16, finding the agreement satisfied all statutory requirements and that Employee's testimony "confirmed the statements and understandings contained in the Full and Final Settlement." The ALJ also found that Employee "intend[ed] to resolve" his claim, "knew that he was not legally obligated to enter into this proposed settlement, and did so with a thorough understanding of the settlement and the effect of the settlement on his ability to receive future benefits," adding that Employee "expressed and acknowledged an understanding that monies allocated and received for future medical treatment should be set aside to ensure that the costs of such treatment will be paid."

¶6 Once approved, the Carrier issued Employee a check for the negotiated amount of $147,000. Employee cashed the check on October 9. A week later, Employee sent the ALJ a one-sentence request for review: "I have concerns regarding the outcome of this case date September 17, 2020 and would like to request a review." Employee refused to return the settlement proceeds. The Carrier filed no response.

¶7 On December 9, the ALJ vacated its prior order and "denied" the proposed settlement, explaining its rationale in one paragraph:

**FINDINGS**

Applicant's Request for Review only stated that he had concerns regarding the outcome of the case but did not state any other grounds for review. However, given the extent of the rights forfeited by a Full and Final Settlement, it is appropriate to vacate the approval and deny the Fully and

Final Settlement if Applicant is not in full agreement. Therefore, the Decision Upon Hearing is vacated and the Full and Final Settlement Agreement is denied.

**¶8** From there, Employee petitioned this court for review, expressing surprise that much of "the settlement was earmarked for the procedures that had been previously denied" and "earmarked for medication," and "requesting that the settlement be increased to cover my recovery and rehabilitation." Carrier responded, asking this court to set aside the ALJ's denial of the already-approved settlement agreement. We have jurisdiction. *See* A.R.S. §§ 12-120.21(A)(2), 23-951(A); Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶9** Employee petitions this court to review the ALJ's decision vacating and denying his settlement agreement with the Carrier, asking that we increase the amount he receives under the agreement, but asserting he "did not agree" the settlement was void. Although we have jurisdiction to review the ALJ's decision, we have no jurisdiction to increase Employee's settlement. Indeed, when reviewing an award of the Commission, this court has only two options—affirm the award or set it aside. We cannot alter or modify the award. *Marriot Corp. v. Indus. Comm'n*, 147 Ariz. 116, 118 (1985).

**¶10** On appeal, Carrier asks us to reinstate the settlement agreement, arguing the ALJ erroneously vacated the agreement after initially approving it. We review de novo questions of statutory interpretation, *Duff v. Lee*, 250 Ariz. 135, 138, ¶ 11 (2020), and contractual interpretation, *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009), deferring to an ALJ's factual findings unless clearly erroneous, *Meno's Constr., LLC v. Indus. Comm'n*, 246 Ariz. 521, 524, ¶ 10 (App. 2019).

**¶11** Arizona law authorizes employees and insurance carriers to negotiate a full and final settlement of an accepted claim for compensation once the period of temporary disability has terminated by final notice of claim status. *See* A.R.S. § 23-941.01(A). The settlement agreement must be in writing, signed by the parties, and the employees must acknowledge they "had the opportunity to seek legal advice and be represented by counsel." A.R.S. § 23-941.01(B). The agreement must also include seven signed attestations set forth in the statute, including that "[t]he employee understands the rights settled and released by the agreement," "[t]he employee understands that monies received for future medical treatment

4

associated with the industrial injury should be set aside to ensure that the costs of the treatment will be paid," and "[c]oercion, duress, fraud, misrepresentation or undisclosed additional agreements have not been used to achieve the full and final settlement." A.R.S. § 23-941.01(C)(1), (4), (7).

¶12        The parties must submit their settlement agreement to the Industrial Commission for approval. And when counsel does not represent an employee, the Commission has additional statutory requirements:

> If the employee is not represented by counsel, the employee shall appear before an [ALJ] of the commission and the [ALJ] shall make specific factual findings regarding whether the requirements of [§ 23-941.01 (B) and (C)] are satisfied. The [ALJ] shall conduct a hearing and perform a detailed inquiry into the attestations provided by the unrepresented employee pursuant to [§ 23-941.01 (C)]. The inquiry shall include whether the unrepresented employee understands the specific rights being settled and released, the information, computation and methodology provided by the carrier, special fund or self-insured employer, and the employee's responsibility to protect the interests of other payors and ensure the payment of future treatment costs.

A.R.S. § 23-941.01(E). "The commission may not approve a full and final settlement if the requirements of [§ 23-941.01 (B) and (C)] are not met." A.R.S. § 23-941.01(F)

¶13        Here, the settlement agreement was in writing, signed by the parties, and included the language and attestations required under § 23-941.01(C). During the brief virtual hearing with the ALJ, the Employee reiterated his agreement under oath. And despite his ambivalence, the Employee said he wanted to "proceed with this settlement." The ALJ thus approved the settlement agreement, finding it satisfied all statutory requirements and that Employee's testimony "confirmed the statements and understandings contained in the Full and Final Settlement." A few weeks later, after receiving the Employee's one-sentence letter with undefined "concerns" about the "outcome," the ALJ reversed course. The ALJ vacated its prior approval of the settlement agreement and rejected the agreement, reasoning: "[G]iven the extent of the rights forfeited by a Full and Final Settlement, it is appropriate to vacate the approval and deny the Full and Final Settlement if [Employee] is not in full agreement."

**¶14**      That was error.  Once approved by the ALJ, the settlement agreement was final and enforceable.  Absent arguments on contract formation, neither party could seek review of the accepted settlement agreement.  *See Pac. W. Constr. Co. v. Indus. Comm'n*, 166 Ariz. 16, 19 (App. 1990) (once the parties entered a settlement agreement, the ability of a party to set it aside was "limited to his ability to prove duress, mental incompetency, fraud, misrepresentations or mutual mistake of fact").  The legislature never authorized such review, and even the Commission's "suggested best practices" contemplate only that an "interested party to a *rejected* Full and Final Settlement Agreement may file a request for review pursuant to A.R.S. §§ 23-942 & 23-943."  *See* Industrial Commission, *Information and Suggested Best Practices*, (Aug. 3, 2018), www.azica.gov (emphasis added).  As a result, we set aside the Commission's decision.

## CONCLUSION

**¶15**      We set aside the Commission's denial of the settlement agreement.

