322 P.2d 886

**UNITED LIQUOR COMPANY, a corporation, Appellant,**

v.

**Margaret B. STEPHENSON, a widow, and Byrd Yoas, as Administrator of the Estate of Richard H. Yoas, deceased, Appellees.**

No. 6265.

Supreme Court of Arizona.

March 19, 1958.

David K. Wolfe, Tucson, for appellant.

Perry A. Devere and Paul G. Rees, Jr., Tucson, for appellee Stephenson.

Wm. Gordon, Tucson, for appellee Yoas.

UDALL, Chief Justice.

This was an action instituted by plaintiff-appellant, United Liquor Company, an Arizona corporation (Kemper Marley, president) to quiet title to a claimed appurtenant easement for ingress and egress (including but not limited to the right to drive, haul, herd and transport livestock, feed, personnel and equipment by means of trucks and other vehicles, or by drovers) to that portion of its cattle range holdings comprising some 25,000 to 30,000 acres in the "Tinaja gathering area"; or in the alternative for a "private way of necessity", for the same use, across less than one mile of defendants' patented lands. The named defendants-appellees are Margaret B. Stephenson, a widow, and Richard H. Yoas, a single man. Inasmuch as Yoas' interest is solely that of a seller under a contract of conditional sale to Mrs. Stephenson, we shall hereafter refer to the latter as the defendant and to the corporate entity as plaintiff.

On January 4, 1954, plaintiff acquired from Howell Manning approximately 200 sections of range lands (this includes leased federal and state lands plus some patented holdings) that lie west of the Tucson-Nogales highway and the Southern Pacific Railroad whose tracks in the main parallel said highway. Manning retained his headquarters "Canoa Ranch" that adjoins defendant's property and gave plaintiff oral permission to use his shipping pens located thereon. Due to the roughness of the terrain and the way it lies, undoubtedly the most convenient and practical route for plaintiff to get into and out of the "Tinaja area" from the Nogales highway is across defendant's land along the route sought for this easement or private way of necessity. Mr. Manning testified, though it was denied by defendant, that he was asked by Mrs.

Stephenson in the year 1951 to build what is now referred to as the "bladed road" leading up the bluff and onto the mesa, which is along the old cattle trail used by him since the year 1921 in driving cattle a few times each year to and from the "Tinaja area". Admittedly this is the only road that heavy trucking equipment could use. Such is the route now in question.

The highly reputable law firm of Duane Bird and Thomas L. Hall of Nogales represented defendant in the early stages of this controversy. At the lengthy trial she was ably represented by Attorneys Thomas L. Hall and Frank Barry (of Tucson), both men of high integrity. The 650-page reporter's transcript reflects the skill and adroitness with which these capable attorneys presented her defense. Toward the end of the trial the presiding judge suggested "Maybe you can settle this lawsuit." After the evidence was all in and just before the attorneys were to argue the issues to the court, counsel for both sides announced that a settlement had been reached. This resulted in the case being removed from the calendar for about two weeks, and during this interim the defendant went over the head of her attorneys and conferred directly with the trial judge. Thereafter the court held defendant did not fully understand the alleged settlement and therefore was not bound by it.

Judgment was entered for defendant, denying plaintiff any relief whatever.

Plaintiff's motion for a new trial or entry of judgment according to the complain or or the stipulation for judgment entered by plaintiff and defendant was denied. This appeal followed.

Plaintiff frames the issues as follows:

1. The establishment of an easement by prescription.

2. The establishment of an easement of necessity, i. e., the condemnation of a private way of necessity.

3. The authority of an attorney to settle and compromise an action.

4. Refusal of the trial court to accept all uncontradicted probable evidence.

If defendant is legally bound by the stipulation entered into between her attorneys and plaintiff's attorney then such a holding will be determinative of this appeal, obviating the necessity of deciding the other issues involved.

An attorney does not, by the general authority arising out of his employment, have an implied or inherent power to compromise and settle his client's cause of action. But, where express authority is given, the attorney may compromise any matter, and his action in so doing is binding upon his principal. Smith v. Washburn & Condon, 38 Ariz. 149, 297 P. 879. Where an attorney is authorized by his client to compromise a lawsuit the attorney has the

legal right to do so and the client is bound thereby unless the settlement is grossly unfair. Allen v. Fewel, 337 Mo. 955, 87 S.W. 2d 142.

The dispute concerning the settlement arose as follows: Court reconvened, after recessing to view the premises, and the judge stated:

> "In this case both sides rested. We viewed the premises and the Court said he would hear oral arguments, and prior to hearing oral arguments *counsel announced that they had agreed upon a settlement* and prior to any oral arguments before a decree was submitted apparently they are not agreed on any settlement and that is what we are here for this morning." (Emphasis supplied.)

It appears to us from a careful perusal of the entire record that defendant Stephenson gave express authority to her attorneys to conclude a settlement and they so understood it. Apparently the only restriction she placed upon them was the suggestion of a minimum sum they should attempt to obtain in exchange for the easement. The form of the judgment to be entered on a quiet title decree for the private easement was substantially agreed upon. Negotiations on the price to be paid were finally concluded at the sum of $1,375, a figure reluctantly but expressly accepted by defendant, although it was far less than she had hoped to receive.

It appears defendant Stephenson requested the Judge to explain to her the effect of the judgment. Defendant claims she did not understand that the court could adopt the settlement of the attorneys and incorporate it into a judgment; nor did she understand that the settlement, entered into prior thereto, included a proviso for a 100-yard driveway for cattle along the route of the bladed road. She avowed it was her understanding that she was merely selling a private easement for a road and stock driveway 30 feet in width and she did not anticipate the provision allowing for a widening of this to 100 yards when stock were periodically driven thereon. It is this alleged subjective mental reservation that doubtless prompted the court to enter the following order:

> "It Is Hereby Ordered that the defendant is not bound by the alleged oral stipulation for judgment, entered into by her attorneys, it appearing to the court that the defendant Stephenson did not understand the stipulation."

It should be noted *this settlement was set aside not because the attorneys did not have authority to settle but because it appeared to the court that defendant did not understand the settlement.* In the case of Diamond Soda Water Mfg. Co. v. Hegeman, 74 App.Div. 430, 77 N.Y.S. 417, at page 419, the following was said:

"Upon making a settlement within the apparent scope of his authority, the principal whom he represents is bound thereby, and cannot subsequently shelter himself behind a restriction upon the authority of the agent, of which the party dealing had no notice or reason to believe existed, and which was not disclosed at the time of the transaction."

From the following testimony it is evident that none of the attorneys could have anticipated defendant's subjective reservation as to the oral stipulation for settlement, i. e., she thought the easement was for a narrow roadway for trucks and her objection was only to its proviso for an expanded driveway for cattle along the route. This position is so opposed to her testimony, at the time of trial, as to appear to be an afterthought on her part. The following excerpts from her testimony on cross-examination, at the trial, clearly show this.

"Q. Your position is that you object to the trial that goes from the intersection across from the Canoa Ranch headquarters being used by trucks and vehicles, is that correct? A. Yes.

"Q. And that you don't object to that trail being used for cattle and four-footed animals, livestock and horses, is that correct? A. Within reason.

"Q. Within reason? A. Yes.

\* \* \* \* \* \*

"Q. I see, but when the cattle were driven across that trail, say, from the intersection to your east fence line and down that train to Canoa Ranch headquarters, would you say it would be within reason then when livestock was driven across there that they were driven straight across as you reasonably drive cattle and get them on out of your land without interfering any more than is absolutely necessary with your ranching operations? A. If it was the only way that any neighbor could do it conveniently and I wanted to be neighborly I would try to be neighborly, be reasonable about it.

"Q. You intend to be neighborly?

A. I do intend. I have always been.

"Q. *But, specifically, you object to trucks and vehicles? A. That is right.*

\* \* \* \* \* \*

"Q. You don't specifically object to there being a cattle trail as distinguished from a road for vehicles? A. Cattle trails are hard to control on a ranch. They are there.

"Q. I know, but as distinguished from a road, do you object specifically

6

to a cattle trail being there? A. Not within reason.

"Q. Not within reason is your answer? A. Yes.

"Q. All right.

"By the Court: As I understand your testimony you do object to trucks going through there even periodically?

"A. Yes, because I can't control it. It's beyond hearing and sight from the ranch. I have no way of knowing unless I move up there or stay on that road.

"By the Court: *You wouldn't object to cattle being driven across the same place?*

"A. *I wouldn't want them driven across every day all day long.* That is why I say within reason. I want to be neighborly. *Nobody has objected to a few cattle that they have brought across there at all.*

\*    \*    \*    \*    \*    \*

"By the Court: Maybe you can settle this lawsuit?

"A. *But I do not want a public highway there.*

"By the Court: In other words, let me ask you this: Would you object to the cattle being trucked across there say twice a year if it were under prop-

per circumstances and supervision— say, you were notified in advance when it was going to be done. The rest of the time it would not be done. Would you object to that?

"A. Is there a way of doing that?

"By the Court: There is a way of doing anything. All right, proceed.

"A. Well, I'd like to know the rest of the details.

"By the Court: Well, that is for your attorney. \*  \*  \*" (Emphasis supplied.)

Subsequently the trial continued, settlement was agreed upon, the dispute as to settlement then arose, and after a hearing where she and her attorneys all testified the court ruled defendant was not bound thereby because of her lack of understanding thereof.

■ It indubitably appears to us from this record that the attorneys did have authority to settle this controversy and did settle it with the consent and approval of defendant. When the dispute regarding settlement arose, these same attorneys, after the court would not then permit them to withdraw, manfully defended their client, in accordance with her wishes and the court's direction, in a successful effort to upset the settlement they had previously agreed to.

The trial court made no findings of fact concerning the authority of the attorneys to settle the case. The sole basis for overturning the settlement was the alleged lack of understanding on the part of defendant as to the width of the cattle driveway. One of her attorneys testified, "That probably took us less time to talk about than any of the other features * * *." She sat through the trial and was frequently consulted as to the terms for settlement. Furthermore she kept silent in the presence of opposing counsel when her attorneys stated to her that the case had been settled. We perceive nothing grossly unfair in the settlement arrived at. Therefore we hold, as a matter of law, she is bound by the settlement concluded pursuant to her authority. Smith v. Washburn & Condon, supra. See also comprehensive annotation on the subject in 30 A.L.R.2d 944; 7 C.J.S. Attorney and Client § 105 a, p. 928.

It will be noted other counsel represent defendant on this appeal.

The judgment is reversed with directions to enter judgment in accordance with the settlement agreed upon by the parties.

Reversed with directions.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.