745 P.2d 604

**Patricia GARN, Petitioner-Appellee,**

v.

**Stacy GARN and Ada Garn, husband and wife, Added Parties-Appellants.**

No. 1 CA–CIV 8987.

Court of Appeals of Arizona, Division 1, Department C.

June 25, 1987.

Reconsideration Denied Sept. 4, 1987.

Review Denied Dec. 8, 1987.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.C. by Jolyon Grant, Scott E. Boehm and Christi-na L. Sundlof, Phoenix, for petitioner-appel-lee.

Gordon B. Giles and Sparks & Siler by Donald O. Loeb, Scottsdale, for added par-ties-appellants.

## OPINION

MEYERSON, Presiding Judge.

This appeal arises from the settlement of a dissolution of marriage proceeding between petitioner-appellee Patricia Garn and her former husband, Stephen Garn. Appellants Stacy Garn and Ada Garn are Stephen's parents. They were added as parties pursuant to A.R.S. § 25–314(D). Appellants argue that the trial court improperly added them as parties and that portions of the dissolution decree that pertain to them should be set aside.

## I. FACTS

Patricia and Stephen Garn were married in 1960. Shortly thereafter, with the financial help of Stephen's parents, they acquired property in Scottsdale, Arizona, for use as their family home. In 1961, Patricia and Stephen executed a quit claim deed to the property in favor of Stacy and Ada Garn. Title to the property continues to remain in the name of the parents as husband and wife. Patricia and Stephen resided on the property until their marital difficulties drove them apart. Stephen remained in possession of the family home and the family business after the separation.

This action was commenced in 1983 as a petition for legal separation; it was later converted into a dissolution proceeding by Patricia in 1984. One of the major issues raised in the litigation concerned the title to the family home. Patricia contended that the home was community property; Stephen contended that it belonged to his parents.

In the fall of 1985, Stephen's attorney made arrangements for Stacy and Ada Garn to be represented by attorney Thomas J. Novak. On October 15, 1985, Stacy Garn met with Novak for the first time and retained Novak to represent him. Novak testified in his deposition that he understood from the conversation that he was going to represent both Stacy and Ada Garn and their marital community in the proceedings. The record shows that Ada Garn was not present at this meeting.

There was no written retainer agreement between Stacy Garn and Novak.

On October 8, 1985, Patricia filed a motion to add appellants as parties to the dissolution proceeding pursuant to A.R.S. § 25–314(D). She argued that it would be impossible for the court to divide and dispose of her community interest in the property without joining Stephen's parents. The motion was not served on the parents. Patricia withdrew her motion after the trial judge indicated that he would probably rule against it.

On October 22, 1985, Stephen filed his own motion to add his parents as parties. The motion was filed one day before the scheduled pretrial conference and two days before the case was scheduled to go to trial. Stacy and Ada were not properly served with copies of the motion.

On October 23, 1985, Patricia, her attorneys, Stephen, his attorney, Stacy Garn, and Novak participated in a lengthy settlement conference. An agreement was reached, and it was dictated into the record by counsel. The agreement provided, among other things, that the community residence would be awarded "to Stephen Garn, his father Stacy Garn, as they so choose." Stephen Garn was to pay Patricia $250,000 with a lump sum payment of between $150,000 and $175,000 raised from a loan secured by the residence. The balance of the settlement was to be paid in monthly installments over a specified period of time. Stacy and Ada were to personally guarantee the balance of the settlement payment. They were also required to cooperate in obtaining a mortgage on the residence. The trial court then granted the motion to join Stacy and Ada as parties "for the purpose of carrying out the terms of the settlement to which Stacy and Ada Garn have agreed through their counsel...." Shortly thereafter the trial court personally addressed Stacy Garn:

THE COURT: Mr. Stacy Garn, did you hear the agreement as it was dictated?

STACY GARN: Yes.

THE COURT: And do you understand the portions of it that provide—that apply to you and your wife, Ada Garn?

STACY GARN: Yes.

THE COURT: And do you agree to that?

STACY GARN: Yes.

The court ultimately found that the marriage of Patricia and Stephen Garn was irretrievably broken and ordered Patricia's attorney to prepare a Decree of Dissolution of Marriage.

The record does not indicate that Ada Garn was consulted concerning her joinder as a party to the action. The first direct contact between Ada and Novak was not until December 31, 1985.

Stacy and Ada subsequently filed a motion to vacate or amend the decree. The court denied this and other post-trial motions; this appeal followed. Stephen Garn has not appealed in this action.

## II. JOINDER OF ADA GARN

Appellants first contend that Ada Garn was improperly joined as a party to these proceedings. Whether an attorney retained by the husband may, without the wife's knowledge and consent, stipulate to join her as a party to a lawsuit is an issue of first impression.

The California Court of Appeals has considered, however, whether an attorney may appear and defend an action without the consent of the client. *Lofberg v. Aetna Casualty & Sur. Co.*, 264 Cal.App.2d 306, 70 Cal.Rptr. 269 (1968). In *Lofberg*, the plaintiff was injured when the unknown person who was driving him home from a bar drove the plaintiff's car into a telephone pole. Plaintiff filed an action against the unknown driver but was unable to serve process. Plaintiff then sought declaratory relief against his insurance company after it refused to provide coverage under the policy's uninsured motorist provisions. He requested the court to order the insurance company to appear and defend on behalf of the unknown and unserved driver. The court rejected the plaintiff's arguments and held: "An attorney may not appear in an action without authority from the party on whose behalf he appears." *Id.* at 307, 70 Cal.Rptr. at 270. *Cf. Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 676 P.2d 669 (App.1984) (service of process on husband insufficient to permit jurisdiction on wife who was not served).

Patricia argues that the legislature has provided that either spouse has the power to contract debts and otherwise act for the benefit of the community. A.R.S. §§ 25–214(B), –215(D). She argues that because both spouses have that power, either spouse may bind the community to an agency relationship with an attorney. Because either spouse may bind the community to the attorney-client relationship, Patricia argues that either spouse may therefore authorize the attorney to enter an appearance in court on behalf of the other spouse. We disagree with this analysis. Although one spouse may consult with or retain an attorney to protect community property without the approval of the other spouse, we perceive a fundamental difference between binding the community to a contract with an attorney to represent the community and submitting the other spouse and his or her interest in community property to the jurisdiction of a court. *See, e.g., Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 728 P.2d 1227 (1986) (spouses must be sued jointly in action on community debt).

A married person's interest in community property is a substantial property interest. For many people, most, if not all, of their assets are community property. It is well settled in Arizona that the respective interests of the husband and the wife in the community property are equal. *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976). Each spouse owns his or her own separate, undivided, one-half interest in the community property which is immediate, present, and vested. *Id.* at 132, 547 P.2d at 1046.

Elementary principles of due process require that before any person may have a valid judgment entered against him, that person must have reasonable notice and an opportunity to appear and defend. *Cravens, Dargan & Co. v. Superior Court*, 153 Ariz. 474, 737 P.2d 1373 (1987). The same considerations exist in the context of one's community property. Because both spouses have their own, separate interest in the community property, both

spouses have their own, separate right to reasonable notice and an opportunity to be heard before a valid judgment against the community may be entered. Allowing a husband to authorize his attorney to join his wife as a party to a lawsuit without the wife's knowledge or consent circumvents the wife's right to an opportunity to appear and defend her own interest in the community property and in her separate property. At stake here is something more than mere litigation tactics or strategy—fundamental property rights. We hold, therefore, that an attorney for one spouse may not stipulate to join the other spouse as a party to a lawsuit without that spouse's consent.

There is no evidence on the record that Ada Garn was consulted by Novak or by her husband before the hearing of October 23, 1985, when the settlement was negotiated and counsel stipulated to join her as a party to the divorce action. The first communication between Ada Garn and Novak was on December 31, 1985, more than two months after she was joined as a party. There was no written retainer agreement between Novak and Stacy and Ada Garn. Ada Garn was not served with process. She was not consulted about being made a party to the litigation and had no notice or opportunity to appear and defend before she was joined as a party and the stipulation was entered on the record. Ada Garn and her marital community were not properly joined to this litigation.

## III. THE STIPULATED SETTLEMENT

Ada Garn next argues that even if she was properly joined as a party to her son's divorce action, attorney Novak had no authority to stipulate to a compromise settlement of the case without her knowledge and consent. Patricia argues that because both spouses have equal power to bind the community, either spouse is empowered to authorize an attorney to settle a lawsuit on behalf of the community.

▮▮▮ Our resolution of this issue begins with the general principle that parties to a lawsuit are ordinarily bound by their stipulations. *See Pulliam v. Pulliam,* 139 Ariz. 343, 345, 678 P.2d 528, 530 (App. 1984). Stipulations are strongly favored by the law and a "party to an action cannot stipulate to one thing and then later change her mind and withdraw her consent." *Id.* at 346, 678 P.2d at 531. When a client expressly authorizes his attorney to settle a lawsuit and the attorney acts in conformity with this authority, the attorney's action in settling the case is binding on the client. *United Liquor Co. v. Stephenson,* 84 Ariz. 1, 322 P.2d 886 (1958). The court therefore will indulge in every reasonable presumption to uphold and enforce the terms of a stipulation. *Cleere v. Blaylock,* 605 S.W. 2d 294 (Tex.Civ.App.1980).

▮▮▮ The attorney-client relationship, insofar as it concerns the authority of an attorney to bind his or her client by agreement or stipulation, is governed by the law of agency. *Balmer v. Gagnon,* 19 Ariz. App. 55, 504 P.2d 1278 (App.1973).

> The authority thus conferred upon an attorney is in part apparent authority— i.e., the authority to do that which attorneys are normally authorized to do in the course of litigation manifested by the client's act of hiring an attorney—and in part actual authority implied in law.

*Blanton v. Womancare, Inc.,* 38 Cal.3d 396, 212 Cal.Rptr. 151, 696 P.2d 645, 650 (1985). As part of an attorney's apparent authority, an attorney is responsible for the day-to-day tactical decisions involved in the process of litigation. *State v. Corrales,* 138 Ariz. 583, 676 P.2d 615 (1983). As an officer of the court, an attorney is clothed with the presumption of authority to represent his or her client. *Gila Valley Elec., Gas and Water Co. v. Arizona Trust and Sav. Bank,* 25 Ariz. 177, 215 P. 159 (1923).

An attorney is not, however, a general agent for a client and there are limitations on his or her power to act on behalf of a client. *Arizona Title Ins. & Trust Co. v. Pace,* 8 Ariz.App. 269, 445 P.2d 471 (1968). The general rule is that an attorney is not authorized, merely by virtue of his or her retention in litigation, to impair a client's substantial rights or the cause of action itself without the consent of the client. *See generally* 30 A.L.R.2d 944 (1982). It is

well settled that an attorney has no implied or apparent authority to settle or compromise a claim and therefore may not stipulate to a compromise settlement of a pending lawsuit without the client's express, actual authorization. *United Liquor Co. v. Stephenson*, 84 Ariz. 1, 322 P.2d 886 (1958). Various courts have also held that without obtaining the express authority of the client, an attorney may not stipulate to submit a case to arbitration, *Blanton v. Womancare Inc.;* stipulate to a matter that would eliminate an essential defense, *Fresno City High School Dist. v. Dillon*, 34 Cal.App.2d 636, 94 P.2d 86 (1939); agree to entry of a default judgment against a client, *Ross v. Ross*, 120 Cal.App.2d 70, 260 P.2d 652 (1953); stipulate that only nomimal damages may be awarded, *Price v. McComish*, 22 Cal.App.2d 92, 70 P.2d 978 (1937); or stipulate to modify an existing agreement, *Burns v. Burns*, 169 Colo. 79, 454 P.2d 814 (1969).

 In this case, it is clear that appellant Stacy Garn was represented by counsel for several weeks before the hearing and at the time the stipulation was entered. The trial judge personally addressed Stacy Garn to determine whether he understood and was satisfied with the terms of the stipulation. Stacy Garn clearly stated on the record that he understood the settlement and that he agreed to it. Stacy Garn, as to his separate estate, is bound by his stipulation in open court. *See United Liquor Co. v. Stephenson*, 84 Ariz. 1, 322 P.2d 886 (1958); *Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 728 P.2d 1227 (1986). Because Stephen Garn did not participate in this appeal from the decree, his interests in the matter will not be considered here.

Despite our conclusion that Stacy is bound under the terms of the decree, we reach a different result with respect to Ada. Although A.R.S. § 25–214(B) provides that in general, both spouses have "equal power to bind the community," the legislature has specifically enacted an exception to that rule:

Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

1. Any transaction for the acquisition, disposition or encumbrance of an interest in real property other than an unpatented mining claim or a lease of less than one year.

2. Any transaction of guaranty, indemnity or suretyship.

A.R.S. § 25–214(C). The legislature has further provided that:

A conveyance or incumbrance of community property is not valid unless executed and acknowledged by both husband and wife, except unpatented mining claims. . . .

A.R.S. § 33–452. The legislature has also provided a specific manner in which one spouse can authorize the other to dispose of interests relating to community real property:

Either husband or wife may authorize the other by power of attorney, executed and acknowledged in the manner conveyances of real property are executed and acknowledged, to execute, acknowledge and deliver, in his or her name and behalf, any conveyance, mortgage or other instrument affecting the separate or community property or any interest therein of the spouse executing the power of attorney.

A.R.S. § 33–454. The legislature has made it a felony for one spouse to falsely and fraudulently represent that he or she is competent to sell or mortgage real estate when the assent of both spouses is required. A.R.S. § 33–457.

Our supreme court has held that the purpose of A.R.S. § 33–452 is "to prevent a husband from conveying or encumbering community property unless it was executed and acknowledged by the wife, the object of which is apparent—to prevent the husband from defrauding the wife." *King v. Uhlmann*, 103 Ariz. 136, 146, 437 P.2d 928, 938 (1968). In cases involving the sale or encumbrance of community real property both spouses must be joined in the transaction or a power of attorney must be executed pursuant to the provisions of A.R.S.

§ 33–454. *See Rundle v. Winters*, 38 Ariz. 239, 298 P. 929 (1931).

The "joinder" required of both spouses under the exceptions specified in A.R.S. § 25–214(C) was discussed by this court in *Consolidated Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 682 P.2d 457 (App. 1984). In *Grimm*, a creditor sought to recover against a husband and wife on an agreement guaranteeing a corporate debtor's credit obligation. The wife did not sign the agreement or authorize her husband to sign the agreement on her behalf. We held that the plain language of the statute "requires that both spouses must execute a guaranty in order to bind the community." *Grimm*, 140 Ariz. at 458, 682 P.2d at 463. Because the wife did not execute the agreement, we held that it could not be enforced against the wife and her marital community. Because the agreement was signed by the husband, however, we held that his separate estate was liable on the guarantee. *Id.* at 458–59, 682 P.2d at 463–64. The same rule applies in cases involving community real property transactions. *Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 728 P.2d 1227 (1986).

We hold, therefore, that one spouse has no implied or apparent authority to authorize an attorney to settle a lawsuit under circumstances such as are present here without obtaining the other spouse's prior, express consent. *See Rundle v. Winters*, 38 Ariz. 239, 298 P. 929 (1931). The nonconsenting spouse may still be bound by the stipulation, however, if she acts to ratify its terms by accepting its benefits or by failing to timely object. *Kellejian v. Kesicki*, 126 Ariz. 12, 612 P.2d 63 (App.1980). She may also be bound by the terms of the stipulation where, under general agency principles, she holds her husband or his attorney out as possessing the authority to stipulate to a settlement under circumstances where equity would estop her from denying the existence of the agency relationship. *See Koven v. Saberdyne Systems, Inc.*, 128 Ariz. 318, 625 P.2d 907 (App.1980).

In applying these principles to the facts of this case, we find nothing on the record to show that Ada Garn authorized her husband to act as her agent in this matter. She never executed a power of attorney allowing him to encumber her community property interests in the real property in question. There is also no evidence on this record to support estoppel, nor evidence that Ada Garn held her husband out as her agent in this matter. She has not acted to accept the benefits of the stipulation, but has sought to repudiate the entire agreement. Stacy Garn, therefore, had no authority to act as Ada Garn's agent to authorize his attorney to enter the stipulated settlement on her behalf.

## IV. CONCLUSION

We conclude that Ada Garn and her community real property interests are not bound by the decree of dissolution of marriage. We therefore reverse the decree of dissolution of marriage as it pertains to Ada Garn and the marital community of Stacy and Ada Garn. We direct the superior court to dismiss the case, without prejudice, against appellant Ada Garn and the marital community. We affirm the terms of the decree that relate to appellant Stacy Garn and his separate estate. We acknowledge that this disposition will create practical difficulties for the trial court. Nevertheless, relief in this matter can be more appropriately fashioned by the trial court than by the appellate court. We therefore remand the case to the superior court for proceedings consistent with this opinion.

Reversed and remanded in part; affirmed in part.

SHELLEY and JACOBSON, JJ., concur.