IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

DON C. ROBERTSON, AS SUCCESSOR TRUSTEE OF THE VIOLA I. ROBERTSON TRUST DATED OCTOBER 1, 2009; CHARLOTTE G. HARDY AS SUCCESSOR TRUSTEE OF THE VIOLA I. ROBERTSON TRUST DATED OCTOBER 1, 2009; JAMES H. HARDY AND CHARLOTTE G. HARDY, HUSBAND AND WIFE; BONITA SUE ESCOBEDO AND JAMES D. SUMPTER, AS SUCCESSOR TRUSTEES OF THE SUMPTER TRUST; W. MICHAEL ADDINGTON AND CHERYL ADDINGTON, HUSBAND AND WIFE AND TRUSTEES OF THE W. MICHAEL AND CHERYL ADDINGTON TRUST,
_Plaintiffs/Appellees_,

_v._

ROBERT E. ALLING AND JACQUELINE R. ALLING, INDIVIDUALLY AND AS HUSBAND AND WIFE; MELISSA L. MOORE, INDIVIDUALLY; DOYLE K. WARNER AND DEANNA K. WARNER, INDIVIDUALLY AND AS HUSBAND AND WIFE; HARRY L. VIEZENS AND MARCIA L. VIEZENS, INDIVIDUALLY AND AS HUSBAND AND WIFE AND AS TRUSTEES OF THE VIEZENS TRUST; FREDERICK AND CALISTA WASHBURN, INDIVIDUALLY AND AS HUSBAND AND WIFE; MGF FUNDING, INC., AN ARIZONA CORPORATION; BRIAN A. MORTENSEN AND OXANA MORTENSEN, INDIVIDUALLY AND AS HUSBAND AND WIFE; ROBERT R. HICKS AND NICOLE HICKS, INDIVIDUALLY AND AS HUSBAND AND WIFE; KARL F. KOHLHOFF AND JOAN M. KOHLHOFF, INDIVIDUALLY AND AS HUSBAND AND WIFE AND AS TRUSTEES OF THE KOHLHOFF FAMILY TRUST; WILLIAM D. LAWRENCE, INDIVIDUALLY; LAWRENCE PROPERTIES, A GENERAL PARTNERSHIP; WILLIAM GLAUNSINGER AND LORNA GLAUNSINGER, INDIVIDUALLY AND AS HUSBAND AND WIFE; THOMAS GRAHAM AND REGINA GRAHAM, INDIVIDUALLY AND AS HUSBAND AND WIFE; GRAHAM HOMES, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; GERALD L. GRAHAM, INDIVIDUALLY AND AS TRUSTEE OF THE GRAHAM FAMILY TRUST, AND VELMA GRAHAM, HIS WIFE,
_Defendants/Appellants_.

No. 2 CA-CV 2013-0148
Filed August 5, 2014

─────────────────────

Appeal from the Superior Court in Gila County
No. CV201100165
The Honorable Peter J. Cahill, Judge

**REVERSED AND REMANDED IN PART; VACATED IN PART**

─────────────────────

COUNSEL

Grasso Law Firm, P.C., Chandler
By Robert Grasso, Jr. and Jenny J. Winkler
*Counsel for Plaintiffs/Appellees*

Clark Hill PLC, Scottsdale
By Russell A. Kolsrud and Mark S. Sifferman
*Counsel for Defendants/Appellants*

─────────────────────

**OPINION**

Judge Howard authored the opinion of the Court, in which Judge Vásquez and Judge Miller concurred.

─────────────────────

H O W A R D, Judge:

**¶1**         Appellants, collectively "the Allings," appeal from the trial court's grant of a motion to enforce settlement in favor of Appellees, collectively "the Robertsons."[1]   On appeal, the Allings argue that the trial court erred in concluding their attorney had authority to settle the matter, that Rule 80(d), Ariz. R. Civ. P., was

─────────────────────

[1]For brevity, we refer to the appellants and appellees by the last name of the first party from each group.

inapplicable, and that material facts of the agreement were not in dispute. Because we conclude reasonable minds could differ about whether the Allings' counsel had apparent authority to settle the case based on the undisputed facts presented, and whether Rule 80(d) applies, we reverse in part, vacate in part, and remand for further proceedings.

## Factual and Procedural Background

¶2 We view the facts in the light most favorable to the Allings, the nonmoving party on the motion to enforce the settlement. *See Canyon Contracting Co. v. Tohono O'Odham Hous. Auth.*, 172 Ariz. 389, 390, 837 P.2d 750, 751 (App. 1992) (summary judgment standard of review applies to grant of motion to enforce settlement). In 2011, the Robertsons sued the Allings to quiet title, for a prescriptive easement, and for a permanent injunction regarding the Allings' real property through which a diversion ditch and water pipe drew water from Bonita Creek to the Robertsons' properties. Pretrial litigation continued until January 29, 2013, when the parties attended a settlement conference. The Robertsons expressly conditioned attending the settlement conference on all of the Allings' presence, and all of the Allings or their representatives with settlement authority were present. Although the parties did not reach a settlement agreement at the conference, the Allings and their counsel agreed, through the mediator, to leave its last conveyed settlement offer open for an additional forty-eight hours. That offer expired on January 31 without an acceptance from the Robertsons.

¶3 The Allings' counsel sent an e-mail to the Allings on February 2 recommending that, although their offer had expired, they leave the offer open until he had a further opportunity to speak with opposing counsel. On February 4, however, five of the twenty-seven Allings e-mailed their counsel, telling him they no longer wished to settle with the terms they had offered at the settlement conference. The Allings' counsel received the e-mail and "may have seen it" but "did not read it." Thus, on February 6 when asked by the Robertsons' counsel on the telephone, the Allings' counsel stated that "the offer was still open for acceptance."

**¶4**　　　　The Robertsons' counsel e-mailed the Allings' counsel after their phone conversation to confirm that the offer was still open and listed the terms of the offered settlement.  The Allings' counsel responded simply, "Confirmed."　　On February 8, the Robertsons' counsel e-mailed and faxed the Allings' counsel the Robertsons' acceptance of the offer.  The Robertsons' counsel filed a notice of case resolution with the trial court, which was distributed to counsel for all parties, and the court vacated the April trial date.

**¶5**　　　　Several weeks later, the Allings' counsel responded to the acceptance and inquiries from opposing counsel regarding draft settlement documentation with a "counter-draft" and explained that some of the Allings had been disputing his settlement authority.  The Robertsons then filed the motion to enforce the settlement.  After oral argument, but without an evidentiary hearing, the trial court ruled that the February 6 e-mail exchange constituted a reoffering of the first offer from the Allings, and granted the motion to the extent necessary to enforce the settlement described in that exchange.

**¶6**　　　　In its conclusions of law filed after the hearing, the court determined that the attempted revocation of authority was ineffective, and therefore the Allings' counsel had both the actual and apparent authority of his clients to settle the matter.  Thus, the court concluded the settlement was enforceable against the Allings and the Allings were estopped to claim otherwise.  It also concluded Rule 80(d) did not apply or was satisfied by an e-mail exchange between counsel on February 6 and 8.  We have jurisdiction over the Allings' appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

### Standard of Review

**¶7**　　　　Regarding the Rule 80(d) arguments of the parties,[2] we review de novo the interpretation and application of court rules.

---

　　　　[2]Rule 80(d) states:  "No agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes."

*Haroutunian v. ValueOptions, Inc.*, 218 Ariz. 541, ¶ 22, 189 P.3d 1114, 1122 (App. 2008). We review the grant of a motion to enforce a settlement using the same standards as for summary judgment. *Canyon Contracting*, 172 Ariz. at 390, 837 P.2d at 751. Under that standard, we determine de novo whether the trial court correctly applied the law and whether any genuine disputes exist as to any material fact. *See Dayka & Hackett, LLC v. Del Monte Fresh Produce N.A.*, 228 Ariz. 533, ¶ 6, 269 P.3d 709, 712 (App. 2012). The trial court should grant summary judgment when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Summary judgment is inappropriate, however, where "conflicting inferences are possible" from the undisputed facts. *Orme Sch. v. Reeves*, 166 Ariz. 301, 308, 309, 802 P.2d 1000, 1007, 1008 (1990).

**¶8**       The Robertsons, however, claim this court is bound by the trial court's findings of fact under Rule 52(a), Ariz. R. Civ. P., unless they are clearly erroneous. But Rule 52(a) applies "[i]n all actions tried upon the facts without a jury or with an advisory jury." The trial court here did not conduct a trial, but an oral argument. And, under *Canyon Contracting*, the summary judgment standard applies.[3] 172 Ariz. at 390, 837 P.2d at 751.

**¶9**       The Robertsons further assert the Allings failed to identify any facts in dispute and never requested the trial court to take evidence. But the Allings do identify a factual dispute concerning apparent authority in their brief and, at the hearing below, specifically told the trial court, "This is akin to a motion for summary judgment proceeding where there are so many issues of fact. There are disputed issues of fact, there are verbal things that the parties disagree about." Accordingly, we review the arguments

---

[3]At oral argument, the Robertsons cited *Reed v. Reed*, 154 Ariz. 101, 740 P.2d 963 (App. 1987), in support of their position. But *Reed* requires "an[] adversarial hearing or proceeding at which the trial court hears evidence and resolves disputed factual issues" before Rule 52 applies. *Id.* at 103, 740 P.2d at 965. No such hearing occurred here.

on appeal as though the court's ruling was one granting summary judgment, despite language in the court's ruling to the contrary. *See John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, ¶ 9, 326 P.3d 279, 283 (App. 2014) ("[C]ourts look to substance not labels.").

## Summary of Rule 80(d) Decision

**¶10** Due to the intertwined nature of the requirements of Rule 80(d) and the determination of apparent authority, we summarize our analysis of that issue before proceeding. We conclude that a genuine dispute of material fact exists concerning the Allings' attorney's authority to extend the time for the Robertsons to accept the settlement offer and prevented the entry of summary judgment. That conclusion normally would require us to vacate the summary judgment and remand the case for trial or evidentiary hearing on the disputed factual issue or other proceedings. But we further conclude that the genuine dispute of fact means the agreement is "in dispute" and makes Rule 80(d) applicable. Because the Allings' assent to the contract is not in writing, the requirements of Rule 80(d) were not met, and the agreement is unenforceable as a matter of law. *See Canyon Contracting*, 172 Ariz. at 392-93, 837 P.2d at 753-54. This conclusion requires reversing the judgment in favor of the Robertsons on that issue and not a remand for proceedings on the issue of the Allings' counsel's authority. We explain these conclusions below, analyzing the issue of the Allings' attorney's authority within the context of Rule 80(d).

## Settlement Authority and Rule 80(d)

**¶11** The Allings first argue their attorney had no actual or apparent authority to settle the case, and the trial court erred in concluding otherwise and enforcing the settlement. The Allings also argue that because the requirements of Rule 80(d) were not met, the settlement agreement is unenforceable as a matter of law, and the court erred in finding the rule inapplicable. The Robertsons contend that the Allings' attorney had either actual or apparent authority, and that neither the existence nor terms of the agreement are in dispute, only its enforceability, and therefore Rule 80(d) is inapplicable.

**Applicability of Rule 80(d)**

¶12        Rule 80(d) provides that "[n]o agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes."  The rule applies to settlement agreements.  *Canyon Contracting*, 172 Ariz. at 391, 837 P.2d at 752.  But where "the existence of the settlement agreement and its terms are not in dispute," the rule does not apply.  *Hays v. Fischer*, 161 Ariz. 159, 166, 777 P.2d 222, 229 (App. 1989).  We therefore determine first whether Rule 80(d) applies.

¶13        In *Canyon Contracting*, in determining whether an agreement was "disputed" and therefore whether Rule 80(d) applied, our examination included whether a genuine dispute of material fact existed regarding the attorney's authority to settle the case.  172 Ariz. at 392, 837 P.2d at 753.  Because we concluded a factual dispute existed, we determined that Rule 80(d) applied.  *Id.*

¶14        We further determined that where the attorney's settlement authority was subject to a genuine dispute of material fact, Rule 80(d) required the writings to include the written assent of the principal.  *Id.* at 393, 837 P.2d at 754.  We reasoned that "[i]n order to effectuate Rule 80(d)'s policy of avoiding difficult issues of proof in the context of enforcing settlement agreements, we hold that the manifestation of assent, as well as the terms of the agreement, must be in writing."[4]  *Id.*  Because one party's assent to

---

[4]Although the plain language of Rule 80(d) does not require the assent to be in writing, *see Fragoso v. Fell*, 210 Ariz. 427, ¶ 7, 111 P.3d 1027, 1030 (App. 2005) (we usually look to plain language of rule to determine intent of drafters), in *Canyon Contracting* this court interpreted the rule to include this requirement.  We only overturn long-standing precedent for compelling reasons.  *Young v. Beck*, 227 Ariz. 1, ¶ 22, 251 P.3d 380, 385 (2011).  Even though the burden is lower with regard to court rules, *see Wells v. Fell*, 231 Ariz. 525, ¶ 11, 297 P.3d 931, 934 (App. 2013), the Robertsons have not argued we should disagree with *Canyon Contracting*, no compelling reason appears to overturn *Canyon Contracting*, and we decline to do so.

the terms was not in writing, we reversed the trial court's judgment and remanded for further proceedings. *Id.*

¶15            Rule 80(d) thus requires an actual "dispute," and the party relying on Rule 80(d) must show at least a genuine dispute of material fact concerning the agreement or the lawyer's authority to bind the party in the settlement of a lawsuit.[5] *Id.* at 392, 837 P.2d at 753. The rule then specifies the procedure for proving an agreement affecting litigation by requiring the agreement or consent and the manifestation of assent to the agreement to be in writing; where the attorney's authority is disputed, the assent must come from the principal directly. *Id.* at 393, 837 P.2d at 754; Rule 80(d). We therefore determine next whether the Allings have raised a genuine dispute concerning their attorney's authority.

**Attorneys' Settlement Authority**

¶16            In Arizona, an attorney's authority to bind a client to a settlement agreement has two governing principles. First, as a general rule, lawyers have no inherent or implied authority to settle a case. *United Liquor Co. v. Stephenson*, 84 Ariz. 1, 3, 322 P.2d 886, 887 (1958); Restatement (Third) of the Law Governing Lawyers § 22 (2000) (hereinafter "Lawyers"). Thus, ordinarily the attorney may not settle or compromise a claim "without the client's express, actual authorization." *Garn v. Garn*, 155 Ariz. 156, 160-61, 745 P.2d 604, 608-09 (App. 1987). Clients remain free to revoke their attorney's settlement authority at any time. Lawyers § 22(3) & cmt. c. Clients are bound, however, "by a settlement reached by [their attorney] before revocation." Lawyers § 22 cmt. c.

¶17            Second, despite the general rule, principles of agency law also govern the attorney-client relationship, and the actions of the client may alter the general rule. *See Panzino v. City of Phoenix*, 196 Ariz. 442, ¶ 17, 999 P.2d 198, 203 (2000). Thus, "if the client places the attorney in a position where third persons of ordinary

---

[5]Because Rule 80(d) is contained in the Arizona Rules of Civil Procedure, it applies only to "suits," *see* Ariz. R. Civ. P. 1, and is limited to agreements or consents in litigation.

prudence and discretion would be justified in assuming the attorney was acting within his authority, then the client is bound by the acts of the attorney within the scope of his apparent authority." *Ariz. Title Ins. & Trust Co. v. Pace*, 8 Ariz. App. 269, 271-72, 445 P.2d 471, 473-74 (1968). Once cloaked with apparent authority, "the termination of the lawyer's [actual] authority does not terminate his apparent authority as to third parties, i.e., adverse litigants." *Panzino*, 196 Ariz. 442, ¶ 17, 999 P.2d at 203; *see also* Restatement (Third) of Agency § 3.11 cmt. c (2006) (hereinafter "Agency") ("Once such a manifestation has been made, it remains operative independent of manifestations as between principal and agent that terminate actual authority.").

¶18        When an attorney acts within the apparent scope of his authority, those acts "are binding on the principal as against a third party who had formerly dealt with the principal through the agent and who had no notice of the revocation, because such a third party is justified in assuming the continuance of the agency relationship." *Panzino*, 196 Ariz. 442, ¶ 17 n.5, 999 P.2d at 203 n.5; *see also Scott v. Randle*, 697 N.E.2d 60, 67 (Ind. Ct. App. 1998) (attorney may have apparent authority to finalize settlement negotiations during litigation where client places attorney "in the position of sole negotiator on his behalf"); *Nelson v. Consumers Power Co.*, 497 N.W.2d 205, 208-09 (Mich. Ct. App. 1993) (attorney has apparent authority to bind client to settlement, and agreement binding if made in writing and signed by attorney); *Kaiser Found. Health Plan of the Nw. v. Doe*, 903 P.2d 375, 379 (Or. Ct. App. 1995) (attorneys can bind clients to settlement when cloaked in apparent authority).

¶19        Apparent authority is established by conduct of the principal that leads the third party to conclude the agent has authority. *Canyon Contracting*, 172 Ariz. at 392, 837 P.2d at 753. The third party's reliance on this apparent authority still must be reasonable in order to bind the principal to the agent's acts. *Miller v. Mason-McDuffie Co. of S. Cal.*, 153 Ariz. 585, 590, 739 P.2d 806, 811 (1987). Thus, whether apparent authority exists is an issue of fact. *Hays*, 161 Ariz. at 163, 777 P.2d at 226. Agency § 3.11 cmt. c explains that it is not reasonable to assume the agent has authority when the

"agent's authority was limited in duration or to a specific undertaking."

¶20 In *Canyon Contracting*, we applied these principles to determine whether an alleged settlement was enforceable. In that case, an attorney and principal appeared together at a settlement conference, but the parties later disputed whether a settlement was reached, and the correspondence after the conference supported conflicting inferences about the existence of the alleged settlement agreement. 172 Ariz. at 392, 837 P.2d at 753. Based on those facts, we concluded "[n]othing in the record presently before us compels a finding that [the attorney] had apparent authority to settle the case or that [the third party] reasonably relied upon such authority." *Id.* Additionally, we concluded "reasonable minds could differ regarding the effect of [the principal]'s mere presence at that [settlement] conference and his subsequent failure to notify [the third party] directly that he had rejected the proposed terms." *Id.* We therefore found the effective grant of summary judgment on the issue inappropriate and reversed and remanded for further proceedings. *Id.* at 393, 837 P.2d at 754.

**Actual Authority in this Case**

¶21 The Allings' and their counsel appeared together at the settlement conference. No settlement was reached. Some of the Allings revoked their attorney's authority on February 4 in an e-mail that he received but did not read. That revocation effectively terminated his actual authority. *See* Agency § 1.04(4) (person has notice of fact if person has reason to know fact or should know fact to fulfill duty owed to another person); E.R. 1.4 & cmt. 2, Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42 (attorney has duty of reasonable communication with client, particularly respecting settlement). Accordingly, the Allings' counsel had no actual authority and his clients were not bound by the settlement on that basis. *See Garn*, 155 Ariz. at 160-61, 745 P.2d at 608-09. The court erred in concluding otherwise.

¶22 The Robertsons argue, however, this notice was ineffective to terminate the Allings' counsel's actual authority because the Allings' counsel did not read the e-mail. The argument

is without merit, and none of the authorities the Robertsons cite supports the proposition that an attorney who has received a client communication but does not read it through neglect or inattention may somehow avoid the legal consequences of the communication with respect to his client. *See Casey v. Ill. Cent. Gulf R.R.*, 687 F. Supp. 1112, 1115 (W.D. Ky. 1988) (because defendant bore risk of mistaken factual assumption to settlement agreement, settlement enforceable against defendant); *Panzino*, 196 Ariz. 442, ¶ 17 & n.5, 999 P.2d at 203 & n.5 (termination of lawyer's actual authority does not terminate apparent authority to third parties); Restatement (Second) of Agency § 124A (1958) (termination of actual authority does not terminate apparent authority); *Id.* § 125 (conditions under which apparent authority ends as to third parties); Restatement (Second) of Contracts § 154 (1981) (hereinafter "Contracts") (circumstances under which party bears risk of mistake of fact); Lawyers § 27 cmt. d illus. 3 (lawyer who fails to disclose lack of settlement authority at conference cannot bind client to settlement).

¶23 The Robertsons also appear to argue that even if some of the Allings effectively revoked their counsel's authority, the remaining Allings were bound by the settlement. But, as the Allings pointed out at oral argument, although the other clients did not explicitly revoke their attorney's authority, they did not extend it either. And the Robertsons offer no authority for the proposition that where an attorney represents a group of parties in a matter, and a significant number of them revoke authority to offer a settlement that purports to provide global resolution of the litigation, the attorney's conduct still may bind the clients who did not revoke his authority. We therefore do not consider the argument further. *See* Ariz. R. Civ. App. P. 13(a)(6) (brief shall contain argument with citations to authorities and statutes relied on); *Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 503, 851 P.2d 122, 128 (App. 1992) ("Arguments unsupported by any authority will not be considered on appeal.").

¶24 The Robertsons further argue, for the first time on appeal, that no deadline was included in the offer, either because a deadline was not a material term or because it was not stated in the offer itself, and therefore their acceptance constituted a counter-offer that the Allings accepted through silence. But they stipulated at oral

argument below that the parties agreed to the forty-eight hour deadline ending January 31, 2013 at 5:00 p.m., and thus the deadline was an explicit term of the offer made at the settlement conference. They cannot change their position now. *See Black v. Perkins*, 163 Ariz. 292, 293, 787 P.2d 1088, 1089 (App. 1989) ("When a party by pleading or stipulation has agreed to a certain set of facts, he may not contradict them."). Thus, once the deadline passed, they could no longer accept that offer. Contracts § 41(1). To the extent they argue the deadline was not a material term and therefore was not binding, they offer no authority to support that argument. *See* Ariz. R. Civ. App. P. 13(a)(6); *Ness*, 174 Ariz. at 503, 851 P.2d at 128.

¶25 We therefore also reject the Robertsons' argument that even if the offer expired, the Robertsons' later acceptance constituted a counter-offer that the Allings accepted through silence. As the trial court correctly concluded at the hearing, the original offer lapsed, the Allings' counsel re-offered it, and the Robertsons accepted the "new" offer. Because the Robertsons' acceptance was in response to the new offer, their acceptance was not a counter-offer after a lapsed offer. Nor does this factual situation suggest that the Allings had a duty to reply or be deemed to have accepted. *Cf. Swingle v. Myerson*, 19 Ariz. App. 607, 609, 509 P.2d 738, 740 (1973) (where offeree takes benefit of services under circumstances indicating compensation expected, offeree can accept offer by silence). Accordingly, the authority the Robertsons cite for their argument on manifestation of assent to a counter-offer through silence is inapposite.

**Apparent Authority in this Case**

¶26 The Robertsons additionally argue the trial court correctly concluded the Allings' counsel had apparent authority, and absent notice from the Allings to the Robertsons of the revocation, the Allings still were bound to the settlement by their counsel's actions. The court reached this conclusion as a matter of law, based on the facts presented in the record. We therefore review its conclusion de novo. *See Dayka & Hackett, LLC*, 228 Ariz. 533, ¶ 6, 269 P.3d at 712.

¶27        Although close, we conclude that by viewing the underlying facts in the light most favorable to the Allings, as we must, this case is analogous to the facts of *Canyon Contracting* and that reasonable minds could draw different inferences from the undisputed facts.  172 Ariz. at 390, 837 P.2d at 751.  The Allings and their counsel attended the settlement conference together, as in *Canyon Contracting*, and reasonable minds could differ on the effect of the Allings' presence there.  The record does not show whether the Allings' counsel conducted the negotiations for his clients or they participated directly with the mediator.   Indeed, the Robertsons' insistence that the Allings actually attend the conference in person could indicate the Robertsons did not think the Allings' counsel had unlimited, or any, settlement authority before the conference, and the Robertsons do not explain what happened during the conference that changed their understanding of the Allings' counsel's authority.

¶28        The parties' mutual agreement, albeit at the Robertsons' suggestion, to place a forty-eight hour window on accepting the offer further supports that inference.  Once that time period lapsed, the Allings were no longer present, and the settlement conference was over, one could reasonably conclude that some new manifestation from the Allings would be required before the Allings' counsel would have apparent authority to make or accept any other offer.  *See Garn*, 155 Ariz. at 160-61, 745 P.2d at 608-09 (by default, attorneys have no inherent or implied authority to settle); *see also* Contracts § 41(1) (offeree's power of acceptance terminates at time specified in offer).

¶29        Nevertheless, competing inferences exist regarding the Allings' counsel's authority.  The Allings were present at the settlement conference and although the record does not indicate whether their counsel or the Allings negotiated with the mediator, the Allings ultimately allowed their counsel to work out the details of the initial offer with opposing counsel.  Having already given their counsel authority to finalize the details of the same offer, reasonable minds could conclude that the Allings had cloaked their counsel with the apparent authority to re-offer, just days later, the same offer from the settlement conference, and that the Robertsons

reasonably relied on the Allings' counsel's representations of his authority. *See* E.R. 4.1(1), Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42 (attorneys have duty not to knowingly "make a false statement of material fact or law to a third person" in course of representing clients); *Panzino*, 196 Ariz. 442, ¶ 17, 999 P.2d at 203; *Pace*, 8 Ariz. App. at 271-72, 445 P.2d at 473-74; *see also In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996) (although based on different law concerning attorney authority, because of "unique nature of the attorney-client relationship" and "the public policy favoring settlements," court presumes "that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so"); *Ackerman v. Sobol Family P'ship, LLP*, 4 A.3d 288, 299-300, 304-05 (Conn. 2010) (after previously representing parties at settlement conference, conferring publicly with clients after conference, and assuring opposing counsel he had authority, lawyer had apparent authority and could bind client to settlement).

¶30 Ultimately, these competing inferences required a factual resolution and precluded the trial court from deciding the issue as a matter of law. *See Orme Sch.*, 166 Ariz. at 308, 309, 802 P.2d at 1007, 1008; *see also Shaffer v. Ins. Co. of N. Am.*, 113 Ariz. 21, 22, 545 P.2d 945, 946 (1976) (remanding for trial on issue of settlement authority where statute allowed party to demand trial on disputed fact). Given the lapse of the established time for acceptance of the initial offer, the apparent need to secure the Allings' physical presence at the settlement conference to ensure the Allings' counsel's authority, and the lack of any further manifestations from the Allings to the Robertsons after the settlement conference, we cannot say as a matter of law that the Allings' manifestations invariably would have led others to believe their counsel had either continuing settlement authority or the authority to re-offer the lapsed offer with the same terms. Accordingly, a genuine dispute of material fact exists with regard to the Allings' attorney's authority, and Rule 80(d) applies. *See Canyon Contracting*, 172 Ariz. at 392, 837 P.2d at 753.

**Rule 80(d) Compliance**

¶31 Because Rule 80(d) applies, we must determine whether its requirements were met here. As we noted above, where the

14

attorney's settlement authority was subject to a genuine dispute of material fact, the writings were required to include written assent by the principal in order to comply with Rule 80(d); any manifestations of assent by the attorney could not be attributed to the client. *Canyon Contracting*, 172 Ariz. at 393, 837 P.2d at 754. This requirement supports the Rule's purpose of avoiding difficult issues of proof. *Id.*

¶32        Here, although the terms of the purported settlement agreement are in writing, and the Allings' counsel manifested his assent, the Allings' assent to the terms of the agreement was not manifested in writing. As in *Canyon Contracting*, we conclude Rule 80(d) therefore precludes enforcement of the purported settlement agreement. *Id.* Accordingly, the trial court erred in finding compliance with the requirements of Rule 80(d).

¶33        The Robertsons argue, however, that even if Rule 80(d) applies, its terms were met here, because the agreement was sufficiently set forth in writing by counsel, relying on *Hays*, 161 Ariz. at 166, 777 P.2d at 229. In *Hays*, we stated the record showed unmistakably that the attorney represented the client and had the client's authority to enter into the settlement agreement. *Id.* We then stated Rule 80(d) did not apply when "[t]he only issue was whether [client] was bound by the settlement agreement" and the agreement in question was not disputed. *Id.* But we distinguished this situation in *Canyon Contracting*, reasoning that in *Hays* the attorney's settlement authority was not in question, only whether the client was bound by the agreement before personally signing it, which was a purely legal question. 172 Ariz. at 392, 837 P.2d at 753. Thus, in *Canyon Contracting*, we concluded where a dispute over the attorney's authority exists, Rule 80(d) requires a direct manifestation of assent from the principal. *Id.* at 393, 837 P.2d at 754. Because we have concluded the Allings' attorney's authority was in dispute, *Hays* does not support the Robertsons' position.

¶34        At oral argument, the Robertsons suggested that this case was identical to *Perry v. Ronan*, 225 Ariz. 49, 234 P.3d 617 (App. 2010), claiming in *Perry* the court had applied *Hays* to uphold a settlement agreement accepted beyond the undisclosed expiration date imposed by the clients. But in that case we concluded the offer

could be accepted because of a delay in the communication of the offer and did not decide the attorney had authority beyond that authorized by his client. *Id.* ¶ 16 & n.3.

## Estoppel

**¶35** The Robertsons also argue that principles of estoppel support enforcing the settlement agreement against the Allings even in the absence of express or apparent authority. "We review a trial court's decision . . . to apply estoppel for an abuse of discretion." *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 27, 156 P.3d 1149, 1155 (App. 2007). A trial court abuses its discretion if it commits an error of law in reaching a discretionary conclusion. *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 455-56, 652 P.2d 507, 528-29 (1982).

**¶36** Equitable estoppel is an independent, common law doctrine and thus not controlled by the enforceability of the settlement agreement or the requirements of Rule 80(d). *See St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 317, 742 P.2d 808, 818 (1987). Under this doctrine, a person may "be held liable as a party to a transaction purportedly done on his account as a result of his manifestations to third parties that another is his agent or as a result of his inaction if he knows third parties believe another to be his agent and he does not take reasonable steps to notify them otherwise." *Fuqua Homes, Inc. v. Grosvenor*, 116 Ariz. 424, 426, 569 P.2d 854, 856 (App. 1977). The third party must rely to its detriment on the apparent authority. *Id.* at 426-27, 569 P.2d at 856-57.

**¶37** The trial court's ruling on estoppel hinged on its conclusion that the Allings' counsel had apparent authority. But because we have concluded based on the record before us that a genuine dispute of fact exists concerning the Allings' counsel's apparent authority, we also must conclude the court abused its discretion in finding that equitable estoppel applied. We cannot say as a matter of law that the Allings manifested apparent authority in their counsel beyond the offer he extended at the settlement conference. The Allings may not have known the Robertsons were relying on the Allings' counsel having continuing settlement authority or that they were under an obligation to take reasonable

steps to notify the Robertsons to the contrary. The Robertsons' argument therefore must fail on appeal. To the extent the Robertsons rely on Lawyers § 27 cmt. b for the proposition that the Allings are estopped from challenging the settlement because of their delay in making such notification, that section still first requires a finding that the Allings had cloaked their attorney with apparent authority, and so this argument also must fail. But although this disputed factual issue cannot be resolved as a matter of law, the trial court may find, after proceedings on remand, that the doctrine of equitable estoppel requires enforcement of the settlement agreement.

**Disposition**

**¶38**      For the foregoing reasons, we conclude the settlement agreement is unenforceable under Rule 80(d). We further conclude that, on this record, summary judgment was inappropriate on the issue of estoppel. We therefore vacate the judgment concerning estoppel and reverse the remainder of the judgment enforcing the settlement. But we remand the case for further proceedings on the estoppel issue and on the underlying claims and defenses, if necessary. Finally, because the Robertsons were unsuccessful in this appeal, we deny their request for attorney fees under A.R.S. § 12-341.01. *See Perry v. Ronan*, 225 Ariz. 49, ¶ 19, 234 P.3d 617, 622 (App. 2010).